Joseph **BENZER** and Dorothy Benzer, Individually and as parents and next friends of Debra, et al., Appellee,

v.

**IOWA MUTUAL TORNADO INSURANCE ASSOCIATION, Appellant.**

No. 56193.

Supreme Court of Iowa.

March 27, 1974.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

David F. McGuire, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Defendant Iowa Mutual Tornado Insurance Association (Iowa Mutual) issued an automobile policy containing uninsured motorist $10,000/$20,000 coverage to Joseph R. Benzer. On September 26, 1970 Dorothy Benzer, the insured's wife, and three of his minor children were passengers in an automobile owned by a relative and operated by that relative's wife. A collision with a vehicle driven by an uninsured motorist injured all these members of the Joseph R. Benzer family and caused injuries and one death to other occupants of the car.

The automobile in which plaintiff's wife Dorothy Benzer and the minor children were riding was insured by State Farm Automobile Insurance Company's policy containing a $15,000/$30,000 uninsured motorist endorsement. Of the total $30,000 payable under State Farm's policy, three other claims, including the death claim, absorbed all except $9263.43. This sum was paid in various amounts to the four injured plaintiffs, who reserved their rights against Iowa Mutual.

These parties stipulated the above apportionment was a fair and suitable division of State Farm's insurance proceeds; the plaintiffs, however, sustained serious injuries and would reasonably have presented claims and made recoveries in excess of the amounts paid by that insurer.

Plaintiffs brought this declaratory judgment action seeking an adjudication they are entitled to recover under the uninsured motorist coverage of the policy issued by Iowa Mutual, and for specific performance.

Iowa Mutual sought to avoid paying any amount under its policy relying on the "other insurance" clause in its contract.

Trial court held plaintiffs were entitled to recover from Iowa Mutual to the amount of its $20,000 uninsured motorist coverage, less the sum of .$9263.43 already received from State Farm, and rendered judgment for the difference, $10,736.57. Upon Iowa Mutual's appeal. we affirm.

I. The "other insurance" clause Iowa Mutual relies on relevantly states in part:

"Other insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance *available to such insured* and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability for such other insurance." (Emphasis added.)

Iowa Mutual asserts the above clause has the "specific statutory blessing" of § 516A.2, The Code, found in chapter 516A, which requires uninsured motorist coverage to be offered to each insured. That section pertinently provides:

"516A.2 *Construction—minimum coverage.* Nothing contained in this chapter shall be construed *as requiring* forms of coverage provided pursuant hereto, whether alone or in combinations with similar coverage afforded under other automobile liability * * * policies, to afford limits *in excess* of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid *duplication of insurance or other benefits.*" (Emphasis added.)

It is this statute, Iowa Mutual contends, which prevents Iowa from joining the clear majority of jurisdictions which simply reject such policy clauses as invalidated by the public policy expressed in uninsured motorist coverage legislative enactments, and permit the insured to recover against two or more uninsured motorist coverage carriers to the extent of his actual dam-ages. See, e.g., Employers Liability Assur. Corp., Ltd. v. Jackson, 289 Ala. 673, 678, 270 So.2d 806, 809 (1972) and cases cited; Fidelity and Casualty Co. of New York v. Darrow, 161 Conn. 169, 174–181, 286 A.2d 288, 290–293 (1971) and cases cited; Patton v. Safeco Insurance Company of America, 267 N.E.2d 859 (Ind.App. 1971); Comment: The Invalidity of the "Other Insurance" Provision: A New Majority, 17 S.D.L.Rev. 152 (1972).

■ We believe the issue in this case may be resolved without determining whether § 516A.2 implies all that Iowa Mutual contends for it. We have concluded the decision is controlled by the language of the company's "other insurance" clause. Before construing that provision, however, we cannot but observe Iowa Mutual is basically seeking to offset uninsured motorist coverage against uninsured motorist coverage to reduce or deny plaintiffs' claim. Had there been no such coverage on the auto in which these plaintiffs were riding, there would be no question but that their damages would have been compensated to the extent of the $20,000 uninsured motorist coverage on their family vehicle. Section 516A.1 sets a minimum amount of insurance which must be offered for the insured's protection. Section 516A.2 specifies the legislation shall not be construed as *requiring* coverage which *exceeds* the minimum amount: it does not set a limit on the maximum protection. See Deterding v. State Farm Mutual Automobile Ins. Co., 78 Ill.App.2d 29, 32, 222 N.E.2d 523, 525 (1966); Patton v. Safeco Insurance Company of America, supra, 267 N.E.2d at 863. Section 516A.2, by equating "insurance" with "benefits" arguably could be construed as expressing only a legislative intent to prohibit the pyramiding of separate coverages to recover more than the actual damages. See generally Transportation Insurance Company v. Wade, 11 Ariz.App. 14, 461 P.2d 190 (1969); Sturdy v. Allied Mutual Insurance Co., 203 Kan. 783, 457 P.2d 34 (1969); Collins v. Motorist Mutual Insurance Company, 36 Mich.

App. 424, 194 N.W.2d 148 (1971); Protective Fire and Casualty Company v. Woten, 186 Neb. 212, 181 N.W.2d 835 (1970).

■ II. A statute applicable to a contract of insurance enters into and forms a part thereof in the same manner as if it had been actually written or copied therein and in construing the terms of the policy, the statute is to be read in connection therewith, in the light of the purpose and intent of the statute. Williamson v. Massachusetts Bonding & Insurance Co., 142 Conn. 573, 576–577, 116 A.2d 169, 171 (1955); 43 Am.Jur.2d, Insurance § 262, p. 321; 44 C.J.S. Insurance § 302, pp. 1214–20; see Bates v. Nelson, 240 Iowa 926, 933, 38 N.W.2d 631, 635 (1949).

■ Thus the "other insurance" provision of Iowa Mutual's policy should be construed in light of the broad intent and purpose of the legislation which required the company to offer the uninsured motorist coverage.

We initially note the title of chapter 516A: "Protection Against Uninsured or Hit-And-Run Motorists." The coverage which must be offered to every insured is "for the protection of persons insured under such policy * * *." Section 516A.1, The Code. See Rodman v. State Farm Mutual Automobile Ins. Co., 208 N.W.2d 903, 910 (Iowa 1973); Markham v. State Farm Mutual Automobile Ins. Co., 326 F. Supp. 39, 43 (W.D.Okla.1971), rev'd on other grounds, 464 F.2d 703 (10 Cir. 1972) (parent-child immunity doctrine).

Other courts have observed these cases are more easily resolved if it is kept in mind the protection is for the insured, not the uninsured motorist. In Horne v. Superior Life Insurance Company, 203 Va. 282, 285, 123 S.E.2d 401, 404 (1962) the Virginia court said:

"It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, Aetna does not stand in the shoes of Washington,

the uninsured motorist. Its policy does not insure Washington against liability. It insures Mrs. Horne and others protected under the policy against inadequate compensation."

For similar language, see Travelers Indemnity Company v. Wells, 209 F.Supp. 784, 790–791 (W.D.Va.1962); MFA Mutual Ins. Co. v. Bradshaw, 431 S.W.2d 252, 255 (Ark.1968); Gordon v. Maupin, 469 S.W. 2d 848, 851 (St.L.Mo.App.1971); Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., 203 Va. 600, 603, 125 S.E.2d 840, 843 (1962).

■ III. In interpreting Iowa Mutual's "other insurance" clause we are not only mindful of the public policy evident in chapter 516A, The Code, but also our rule that where insurance contracts are ambiguous, require interpretation, or are susceptible to two equally proper constructions, the court will adopt the construction most favorable to the insured. Rich v. Dyna Technology, Inc., 204 N.W.2d 867, 872 (Iowa 1973).

Other of our rules more specifically apply.

■ An insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms. Roach v. Churchman, 431 F.2d 849 (8 Cir. 1970), dismissing appeal from remand, 457 F.2d 1101 (8 Cir. 1972); Jackson v. Continental Casualty Company, 266 F.Supp. 782 (S.D.Iowa 1967), aff'd, 400 F.2d 285 (8 Cir. 1968); Wilson v. State Farm Mutual Automobile Ins. Co., 256 Iowa 844, 846–848, 128 N.W.2d 218, 220 (1964).

■ A contract of insurance should be interpreted from the viewpoint of an ordinary person, not a specialist or expert. Rodman v. State Farm Mutual Automobile Ins. Co., supra, 208 N.W.2d at 906; Qualls v. Farm Bureau Mutual Insurance Company, 184 N.W.2d 710, 712 (Iowa 1971); Bates v. United Security Insurance Company, 163 N.W.2d 390, 397 (Iowa 1968).

The interpretive problem in this case centers in the phrase, "available to such insured." "Available" has been defined as capable of use for the accomplishment of a purpose; immediately utilizable; that it is accessible or may be obtained; at disposal. Duncan v. United States, 368 F.2d 98, 102 (5 Cir. 1966); see Garrison Independent School District v. McDuffie, 414 S.W.2d 492, 496 (Tex.Civ.App.1967). One scholar has characterized the word as one often used because it is flexible, or despite its flexibility. D. Mellinkoff, The Language of the Law 21 (1963).

■ As used here, we believe "available to such insured" is ambiguous and subject to the interpretation an ordinary layman would give it.

IV. Iowa Mutual implies because the host's primary insurance was "available" to these plaintiffs, it owes them nothing under the coverage it sold. For authority for its contentions Iowa Mutual cites two California decisions, Kirby v. Ohio Casualty Insurance Company, 232 Cal.App.2d 9, 42 Cal.Rptr. 509 (1965) and Grunfeld v. Pacific Automobile Insurance Company, 232 Cal.App.2d 4, 42 Cal.Rptr. 516 (1965). Those decisions turned on the rigid constraints of the statutory exemption in California's uninsured motorist law:

"(c) *Exemptions.* The insurance coverage provided for in this section does not apply:

"* * *

"(2) To bodily injury of the insured while in or upon or while entering into or alighting from an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section."

(See *Kirby,* supra, 42 Cal.Rptr. at 511; *Grunfeld,* supra, 42 Cal.Rptr. at 518).

Iowa has no similar statutory provision.

Nor are we convinced the company finds the support it claims in Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500 (1963). That case has been distinguished from the type of case presented here. See Gordon v. Maupin, supra, 469 S.W.2d at 851, n. 5. The decision was filed before chapter 516A was enacted. In *Burcham* the insured's damages were fully paid within the limits of the uninsured motorist coverage on the auto in which he was riding. Each of the insurance carriers involved had a limit of $5000 uninsured motorist coverage. Plaintiff settled with the "other" company for $3700. Thus is was held he could not collect again from his own carrier. In 255 Iowa at 74–76, 121 N.W.2d at 502–503, we said:

"This [uninsured motorist coverage] is actually a different type of insurance, it does not protect against liability *but is an added benefit to pay what the insured is legally entitled to recover against the owner or operator of an uninsured automobile * * *.*

"* * *

"* * * Clearly, neither company intended an insured to receive more than $5,000 from all sources while occupying a non-owned automobile. * * * To disregard the provisions of both policies and to allow plaintiff to collect to the extent of the policy limit of each policy, as asked by plaintiff, is equally absurd in the face of positive policy limitations. This is not the construction of ambiguous policy provisions in favor of the insurance company and against the insured, a construction sanctioned nowhere, but a construction of the liability as between the insurance companies." (Emphasis added.)

In the case *sub judice* plaintiffs are not seeking double recovery but merely one recovery within the limits of the lower uninsured motorist coverage. We cannot interpret *Burcham* to deny them this right.

Assuming the other occupants of the auto in which these plaintiffs were riding had won the race to the courthouse and taken all the primary insurance, plaintiffs according to their insurer, would have nothing coming from their own policy.

What we said in a related context in Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co., 175 N.W.2d 413, 417 (Iowa 1970) bears on our interpretation of the ambiguity in the "other insurance" clause before us:

"It is our belief, this case can be more equitably resolved by a return to settled principles which give dominant consideration to rights of the insured who should have coverage no less than if she had been protected by only one of the policies. * * *. The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would lead to a conclusion that the latter, though protected by two policies, actually has none."

■ V. Plaintiffs point to the logic of the authorities holding the words "available to such insured" (or language of like import using the word "available") means *actually* available, not simply theoretically "available" in a mass race to the courthouse.

When the Arizona court was confronted with similar language, it said, in Kraft v. Allstate Insurance Company, 6 Ariz.App. 276, 279, 431 P.2d 917, 920 (1967):

"To permit the insurance company which received the additional premium to avoid liability when its insured *in fact* cannot collect for his loss under the 'other insurance' shocks the conscience of this court. * * *

" * * * Allstate charged a premium for the coverage; it cannot be permitted to vanish as the pea in the shell game. We hold that [the] other insurance was not available to Kraft and Allstate's coverage for uninsured motorist protection remains."

Under almost identical facts the court in Travelers Indemnity Company v. Wells, supra, 209 F.Supp. at 790 reasoned:

"This clause says Travelers insurance in this situation shall ' * * * apply only as excess insurance over any other similar insurance available to such occupant * * *' In construing this phrase, all ambiguities must be resolved in favor of the insured and against the insurer. This Court must decide whether the phrase is to be narrowly construed in such a way as to include only those claimants who race fastest in getting suits filed and judgment thereon up to $30,000.00, or whether the proper interpretation of the phrase would include the Wellses, who, within the statutory time permitted by law, filed their suit for a judicial determination of their right of recovery only to find their insurer claiming that since there were funds 'available' at the time of the accident, there are not any available now to pay for their injuries. This kind of legal double talk must be difficult to understand for a seriously injured insured who has paid a premium for insurance coverage against the very type of injury he has suffered. It is equally difficult for this Court to approve such a theory in light of the avowed purpose of Virginia's Uninsured Motorist Law."

The same rationale was applied in Gordon v. Maupin, supra, 469 S.W.2d at 850, and approved in Fidelity and Casualty Co. of New York v. Darrow, supra, 161 Conn. at 180–181, 286 A.2d at 293.

Travelers Indemnity Company v. Wells, quoted supra, was reversed by the Fourth Circuit Court of Appeals, 316 F.2d 770 (4 Cir. 1963), in which decision the Circuit Court made an Erie-type conjecture relating to the manner the Virginia Supreme Court of Appeals would have determined the law of the case. The conjecture was wrong. When the Virginia court ultimately confronted the issue, it rejected the reasoning and the result of the Circuit Court decision:

"We cannot agree with that holding. Aside from the Smith insurance not being 'available' to the Wells after the Smiths had taken it all, we are of opinion, as stated above, that the Other In-

surance provisions of the Bryant, Jr., policy is invalid because in conflict with the requirement of § 38.1–381(b) of the Code." Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 902, 140 S.E.2d 817, 820 (1965).

We are persuaded the logic of the cases quoted above applies here.

■ Construed with the broad protective design of the legislature before us and in conformance with the above rules, we believe the language of Iowa Mutual's "other insurance" clause permits the company to avoid paying plaintiffs' damages only to the extent those damages were in fact paid by "other (primary) insurance," limited, of course, by the maximum payment specified in the uninsured motorist coverage.

We conclude trial court reached the right result. The case is affirmed.

Affirmed.