Silas HOLLAND, Jr., as the Administrator of the Estate of John Lee Holland, Deceased, and Silas Holland, Jr., father of the Decedent, Individually, Appellants,

v.

HAWKEYE SECURITY INSURANCE COMPANY, Cross-Petitioner and Appellee,

v.

Melvin L. PATTERSON, as the Administrator of the Estate of Randall Patterson, Deceased, et al., Third-Party or Cross-Petition Defendants and Appellants.

No. 2–56429.

Supreme Court of Iowa.

June 25, 1975.

Ennis McCall, Newton, for Holland.

John N. Diehl, Newton, for Patterson.

Dale Swanson, Newton, for Forbes.

James W. Cleverley, Newton, for Lockman, appellants.

A. Roger Witke, Des Moines, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and McCORMICK, JJ.

MOORE, Chief Justice.

On joint motion of all parties for adjudication of law points the trial court held $20,000 was the maximum dollar limit of uninsured motorist coverage under defendant's insurance policy issued to Ronald Lockman. Plaintiffs and cross-petition defendants, with our permission, have appealed.

The parties stipulated in the trial court to the following facts:

"Come now all of the above named parties except Ricky Modlin, Elmer Modlin and Judy Modlin who, although properly served with original Notice on August 31, 1972, have not appeared to date, and stipulate and agree to the following facts in order for the Court to adjudicate a law point raised by the pleadings herein and specified in the Motion to Adjudicate Law Point to be filed herein.

"1. On the 21st day of July, 1971, all of the following persons were occupant-passengers in a 1971 Chevelle station wagon owned and driven by Ronald Lockman when it was struck by a vehicle owned by one Claude Franklin Smith at the intersection of Army Post Road and Southeast 14th Street in Polk County, Iowa:

"a. John Lee Holland, Deceased, a Minor.
"b. Randall Patterson, Deceased, a Minor.
"c. Gary Forbes, a Minor.
"d. Debbie Lockman, a Minor.
"e. Eddie Lockman, a Minor.
"f. Anna Lockman.
"g. Ricky Modlin, a Minor.

"2. Elmer Modlin and Judy Modlin are the parents of Ricky Modlin. Ronald Forbes and Mary Forbes are the parents of Gary Forbes. Ronald Lockman and Anna Lockman are the parents of Debbie Lockman and Eddie Lockman. Melvin L. Patterson and Donna Patterson are the parents of Randall Patterson, Deceased. Silas Holland, Jr., is Administrator of the Estate of John Lee Holland, Deceased. Melvin L. Patterson is Administrator of the Estate of Randall Patterson, Deceased.

"3. On the 21st day of July, 1971, there was in full force and effect an insurance policy issued by Hawkeye Security Insurance Company to Ronald Lockman, d/b/a Lockman Electric, designated as a commercial multi-cover policy number H–CC9–01394, a copy of which is attached hereto as Exhibit A to this stipulation. It is agreed that this is the policy or the pertinent parts thereof, and that any policy copies attached to any

pleadings or motions on file shall be conformed or amended to reflect that the copy of the policy hereto attached is the one to be used and considered by the Court.

"4. None of the occupant-passengers of the Lockman vehicle involved in the accident except those of the last name 'Lockman' were or are members of the Lockman household or family.

"5. Claude Franklin Smith was driving an uninsured motor vehicle within the meaning of the Hawkeye Security Insurance policy in question at the time of the accident herein involved.

"6. At the time of the accident herein involved, Claude Franklin Smith was negligent in the operation of his vehicle and such negligence was the sole, proximate cause of the accident in question and of the injuries of the parties herein involved.

"7. On the 21st day of July, 1971, Ronald Lockman owned a total of nine (9) automobiles and trucks listed as follows, with the total number owned and the description of the vehicles owned being subject to verification and amendment. These automobiles and trucks were:

"1968 Chevrolet Panel Truck
"1968 General Motors GMC Pickup
"1969 Mercury
"1969 Chevrolet El Camino Truck
"1965 Pontiac
"1969 Chevrolet Camaro
"1971 Chevelle Station Wagon
"1958 Chevrolet Bus
"1954 International Harvester Bus

"The 1971 Chevelle Station Wagon listed above was the motor vehicle involved in the accident in question. Some of the foregoing vehicles were family vehicles and some were business vehicles.

"8. Ronald Lockman, d/b/a Lockman Electric paid a premium of $3.00 annually per owned vehicle listed above for the uninsured motorist coverage in such policy."

No other evidence was introduced.

The first sheet of the policy, exhibit A, entitled "Commercial Multicover Policy

Coverage Sheet" states in the first paragraph:

" * * *. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific page number(s) and the inclusion of the insuring agreement herein. The limit of the company's liability against each such coverage shall be stated below or in the applicable insuring agreement, subject to all the terms of the policy and insuring agreements having reference thereto. * * *."

Following this statement are three columns listing various coverages, the limits of liability for each and policy page references for each coverage. The last item in the "Coverage" column, under words "Other Coverage (Specify)," is "Family Protection Coverage." To the immediate right of these words, in the column entitled "Limits of Liability," appear the words "Per Endorsement A 412c." That endorsement includes the following "Limits of Liability" provision:

"6. Limits of Liability.

"(a) The limit of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

At the bottom of the page containing the "Limits of Liability" provision appears a "Schedule." It designates Ronald Lockman as named insured and states "limits of liability" of $10,000 per "each person" and $20,000 for "each accident." The insured automobiles are designated by a mark in a box next to the words "Any automobile owned by the principal named insured."

Trial court held the Hawkeye policy at this point, without reliance on the "other insurance" clause appearing in the endorsement, effectively established defendant Hawkeye's limit of liability at $20,000 for all damages resulting from any one accident with an uninsured motorist. Hawkeye, of course, takes this position on appeal. It tendered payment of $20,000 in the lower court.

Plaintiffs and cross-petition defendants assert here, as they did in the trial court, that the fact insured Lockman paid a premium to defendant Hawkeye of $3 annually per owned vehicle controls or lessens the effect of the above quoted language of the policy so as to modify and enlarge the uninsured motorist coverage from $20,000 to $180,000 for any one accident, because the insured owned nine vehicles on the day of the accident. In other words plaintiffs and cross-petition defendants contend for "stacking" or "pyramiding" of the uninsured motorist coverage.

The trial court rejected this contention, stating:

"Absent some factual stipulation, evidence or factual determination that there was something about the premium charged or the basis thereof which was no unique or unusual as to be determinative of the objective intent of the parties the clear language of the written provisions of the insurance contract must be upheld."

I. Appellants' contention raises an issue of first impression in this court. However this same contention has been considered by several jurisdictions. The argument has been rejected outright in the following cases: Westchester Fire Insurance Company v. Tucker, Tex., 512 S.W.2d 679, 684, 685; Talbot v. State Farm Mutual Automobile Ins. Co., Miss., 291 So.2d 699, 702; Hurles v. Republic Franklin Ins. Co., 39 Ohio App.2d 118, 316 N.E.2d 494, 496–498; Allstate Insurance Co. v. McHugh, 124 N.J.Super. 105,

304 A.2d 777, 778, 779; Doerpinghaus v. Allstate Insurance Co., 124 Ga.App. 627, 185 S.E.2d 615, 616; Martin v. Christensen, 22 Utah 2d 415, 454 P.2d 294, 296; Castle v. United Pacific Insurance Group, 252 Or. 44, 448 P.2d 357; Pacific Indemnity Company v. Thompson, 56 Wash.2d 715, 355 P.2d 12.

Courts rejecting the argument payment of multiple premiums entitles the insured to multiple coverages generally do so on the basis that the insurer incurs a greater risk when insuring additional motor vehicles and that this additional risk is the consideration given for the additional premium. This view is expressed by the New Jersey court in Allstate Ins. Co. v. McHugh, supra, 304 A.2d 777, at 778:

> "There is, however, increased risk incurred by the carrier when insuring separate motor vehicles under Coverage S. It is true that the named assured is covered under Coverage S regardless of the circumstances under which he is injured by an uninsured motorist. He has this coverage whether one, two or more vehicles are covered. Coverage S extends not only to the individual assured but also extends coverage to the vehicle under this situation."

> "Coverage S provides 'the company will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured vehicle * * *.'

> "Persons insured are defined as '(b) any person while occupying an insured highway vehicle.'

> "It is conceivable that Frank McHugh could be operating one vehicle with multiple passengers therein, his wife operating the second vehicle with multiple passengers therein. All the passengers in *both* vehicles are covered under Coverage S. This increased risk provides sufficient consideration and justification for charging a separate premium at the same rate for additional cars on the same policy.

> "In Castle v. United Pacific Ins. Group, 252 Or. 44, 448 P.2d 357 (Sup.Ct.1968), the court stated, when faced with the argument that payment of double premiums affords double coverage, that 'the premium paid and the coverage extended to each of the two automobiles was simply to provide this form of coverage for *each* of the insured vehicles.' (Emphasis added)."

We believe this rationale is applicable to the Hawkeye policy under the limited facts in the record before us.

Several of the above cited cases find and point out the policy language involving uninsured motorist coverage is clear and unambiguous. The trial court in the case at bar made such a specific finding.

Sturdy v. Allied Mutual Insurance Company, 203 Kan. 783, 457 P.2d 34, cited by appellants, is probably the leading case supporting the view payment of multiple premiums for uninsured motorist coverage under a single policy insuring several vehicles warrants a reasonable expectation of multiple coverage, and thus permits "stacking" or "pyramiding" of the liability limits on each vehicle insured. In Sturdy the policy insured two automobiles. A separate and equal premium was charged on each automobile. The Kansas court found the policy language ambiguous, stating:

> "The policy simply does not state plainly, explicitly and unmistakably just what the coverage is." 457 P.2d at 39.

The Kansas Court also found an additional ambiguity arose from the policy's definition of "insured."

We agree with trial court that under the record the premium charges made by Hawkeye afford no basis for "stacking" or "pyramiding."

II. Appellants argue coverage of the nine vehicles is sufficient to hold nine policies were in force. On this premise they cite several cases which hold "stacking" or "pyramiding" is allowed when there is more than one policy.

The trial court held and we agree that only one policy existed between Hawkeye

and Lockman. In the instant case we have multiple vehicle coverage under one policy. We do not have nine policies applying to the same vehicle. In support of this conclusion see Automobile Club Inter-Insurance Exchange v. Diebold, Mo., 511 S.W.2d 135, 138; Castle v. United Pacific Insurance Group, supra, Or., 448 P.2d 357 and citations in each.

III. Uninsured motorist coverage of at least $10,000 per person and $20,000 for each accident is mandated by the express language of Code sections 516A.1 and 516A.2. The public policy of this State as expressed by those statutes does not require uninsured motorist coverage over and above the $10,000–$20,000 limits provided in subsection 10 of Code section 321A.1. Benzer v. Iowa Mutual Tornado Insurance Assn., Iowa, 216 N.W.2d 385, 387. Hawkeye's policy effectively made known the limit of liability with regard to each person and each accident.

IV. We agree with trial court the insurance contract before us clearly displays an objective intent to provide maximum uninsured motorist coverage of $20,000 for injuries arising out of one accident. No evidence to the contrary is found in the record.

We have often said the rules for resolving ambiguous policies do not come into play unless it can fairly be said there is a real ambiguity in the terms of the policy. Stover v. State Farm Mutual Insurance Company, Iowa, 189 N.W.2d 588, 591. See also Hoefler v. Farm and City Insurance Company, Iowa, 193 N.W.2d 538, 540; State Auto. & Cas. Under. v. Hartford Acc. & Ind. Co., Iowa, 166 N.W.2d 761, 764; 43 Am.Jur.2d, Insurance, section 259; 44 C.J.S. Insurance § 290; 13 Appleman, Insurance Law and Practice, section 7381.

We, like the trial court, find the terms of the policy here being examined are clear and unambiguous.

V. Since we conclude, as did the trial court, that only one policy is here involved, we need not consider the provisions of paragraph 7 entitled "Other Insurance" to which appellants refer under the assumption there were nine separate coverages. We have here only one policy and one accident. "Other Insurance" is not involved.

VI. We have carefully studied and considered all issues raised and the cases relied on by the respective parties. We hold the trial court's ruling must be approved.

Affirmed.