**Maxine McCLURE, now known as Maxine Greenhalgh, Administrator of the Estate of Gale McClure, Deceased, Appellant,**

**v.**

**EMPLOYERS MUTUAL CASUALTY COMPANY and Motor Club of Iowa Insurance Company, Appellees.**

No. 2–56962.

Supreme Court of Iowa.

Jan. 21, 1976.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, and Hoffman, Hoffman & Stewart, Leon, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, by William F. Fanter, Des Moines, for appellee Employers Mut. Cas. Co.

Joseph A. Billings, Des Moines, for appellee Motor Club of Iowa Ins. Co.

UHLENHOPP, Justice.

This case involves "stacking" of insurance policies, among other issues.

Gale McClure met death in a collision of a motor vehicle in which he was riding and a motor vehicle operated by a negligent uninsured motorist. McClure's dependent widow as such received workmen's compensation benefits of $10,094.17. The probate court appointed the widow as administrator of McClure's estate. In a separate action by the administrator against the uninsured motorist, the district court adjudged the damages to McClure's estate resulting from his death to be $30,000. The administrator then brought the present action to recover uninsured motorist insurance.

Defendant Employers Mutual Casualty Company insured the motor vehicle in which McClure was riding. The City of Creston, Iowa, owned the vehicle and is the named insured. McClure is an insured under that policy, which provides uninsured motorist coverage up to $10,000 for each person and up to $20,000 for each accident. In addition, McClure is a named insured under a policy on his own car. Defendant Motor Club of Iowa Insurance Company issued that policy, which covered McClure while riding in other motor vehicles and provided similar $10,000–$20,000 uninsured motorist coverage. The parties raise no issue about the approval of these policies by the Iowa Insurance Commissioner.

The administrator sued each insurer for $10,000, for a total of $20,000. The trial court held for the insurers and dismissed the petition. The administrator appealed.

The word and figure "Part" or "Part IV" in the policies means the policy part relating to uninsured motorist insurance, and the words "bodily injury" include death.

Employers Mutual's policy contains an "other insurance" clause which states:

*Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and

the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

Motor Club's policy also contains an other insurance clause. This clause states:

*Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance.

With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this Part for a greater proportion of the applicable limit of liability of this Part than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this Part, the company shall not be liable under this Part for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.

In addition, Employers Mutual's policy contains a workmen's compensation clause:

Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by . . . the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

Motor Club's policy contains a similar though not identical workmen's compensation clause, but we need not set it out.

The appeal presents two main questions: (1) Is the administrator entitled to recover at most $10,000 or $20,000 of uninsured motorist insurance? and (2) Is the workmen's compensation of $10,094.17 to be deducted from such $10,000 or $20,000? The first question involves the other insurance clauses in the two policies, while the second question involves Employers Mutual's workmen's compensation clause.

I. *The "Other Insurance" Clauses.* The effect of the pertinent paragraph of each of the other insurance clauses before us is to restrict the administrator to a maximum recovery of $10,000 of uninsured motorist insurance, provided that one or both of those pertinent paragraphs are valid and applicable. The pertinent paragraphs, as we shall see, are the second paragraph of Employers Mutual's other insurance clause and the first paragraph of Motor Club's other insurance clause. We turn first to the *validity* of the other insurance clauses.

A. In common with a number of states, Iowa has a statute requiring motor vehicle liability insurance policies to contain uninsured motorist coverage unless expressly rejected by the named insured, § 516A.1, Code 1975:

No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages

from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured motor vehicle, or arising out of physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. Such coverage shall include limits for bodily injury or death at least equal to those stated in subsection 10 of section 321A.1 of the Code ["$10,000–$20,-000" coverage]. The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.

However, the named insured shall have the right to reject such coverage by written rejections signed by the named insured. If such rejection is made on a form or document furnished by an insurance company or insurance agent, it shall be on a separate sheet of paper which contains only such rejection and information directly related thereto. Such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected such coverage in connection with a policy previously issued to him by the same insurer.

See *Holland v. Hawkeye Security Ins. Co.*, 230 N.W.2d 517 (Iowa); *Langstraat v. Midwest Mut. Ins. Co.*, 217 N.W.2d 570 (Iowa); *Benzer v. Iowa Mut. Tornado Ins. Assn.*, 216 N.W.2d 385 (Iowa); *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903 (Iowa); *Western Cas. & Sur. Co. v. General Cas. Co. of Wis.*, 200 N.W.2d 892 (Iowa); *Burcham v. Farmers Ins. Exch.*, 255 Iowa 69, 121 N.W.2d 500; *Simpson v. State Farm Mut. Auto. Ins. Co.*, 318 F.Supp. 1152 (S.D.Ind.) (tracing development of Iowa law on this subject); Neighbor, Pyramiding Uninsured Motorist Coverage—Has Iowa Joined the Majority? 23 Drake L.Rev. 746.

A few states have enacted additional provisions on this subject, authorizing policy clauses which eliminate duplication of insurance or benefits in various ways: e. g., Cal.Ins.Code (1975 Supp.) § 11580.2(d) and (h) (other uninsured motorist coverage or workmen's compensation, medical payments, and liability coverages); S.C.Code (1974 Cum.Supp.) § 46–750.38 (other property damage insurance); Tenn.Code Ann. (Supp.1974) § 56–1152. The Iowa legislature enacted such a provision in a second section of the uninsured motorist insurance chapter, now § 516A.2 of the Code. This section closely resembles a corresponding section in Tennessee. See *Shoffner v. State Farm Mut. Auto. Ins. Co.*, 494 S.W.2d 756 (Tenn.). Section 516A.2, consisting of two sentences, is at the heart of the first part of the present controversy. The first sentence states:

Nothing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1 of the Code [$10,000–$20,000].

The second sentence states:

Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

Under statutes like our first section, § 516A.1, the courts have decided a number of cases involving challenges to the validity of other insurance and similar clauses which in one way or another restrict the injured person's recovery to the amount of the highest limits in any one of the uninsured motorist policies covering him at the time of the injury where his damages from his injuries exceed those limits. The cases are

gathered in Annotation, 28 A.L.R.3d 551. See also 45 C.J.S. Insurance § 980.1 (1975 Supp.), 46 C.J.S. Insurance § 1402 (1975 Supp.). A majority of the courts hold under statutes corresponding to § 516A.1 that such policy clauses are invalid and that the insured may stack the uninsured motorist coverages up to the actual amount of damages sustained from the injuries. Illustrative of such decisions are *Booth v. Seaboard Fire & Marine Ins. Co.,* 431 F.2d 212 (8 Cir.); *State Farm Mut. Auto. Ins. Co. v. Cahoon,* 287 Ala. 462, 252 So.2d 619; *Sellers v. United States Fid. & Guar. Co.,* 185 So.2d 689 (Fla.), on remand 197 So.2d 832 (Fla. App.); *Meridian Mut. Ins. Co. v. Siddons,* 451 S.W.2d 831 (Ky.); *Johnson v. Travelers Indem. Co.,* 359 Mass. 525, 269 N.E.2d 700; *Blakeslee v. Farm Bureau Mut. Ins. Co.,* 388 Mich. 464, 201 N.W.2d 786; *Van Tassel v. Horace Mann Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348; *Motorists Mut. Ins. Co. v. Tomanski,* 27 Ohio St.2d 222, 271 N.E.2d 924; *Westphal v. Amco Ins. Co.,* 209 N.W.2d 555 (S.D.). The reason frequently given in the opinions for the holding is that since a statute such as § 516A.1 requires *every* policy to contain uninsured motorist coverage, the legislature must have intended that such coverage cannot be cut down or eliminated in *any* policy by a clause requiring reduction on account of *other* policies. Illustrative cases taking a contrary view, so long as the injured person receives at least the statutory minimum amount, are *McCarthy v. Preferred Risk Mut. Ins. Co.,* 454 F.2d 393 (9 Cir.); *M.F.A. Mut. Ins. Co. v. Wallace,* 245 Ark. 230, 431 S.W.2d 742; *Morelock v. Millers' Mut. Ins. Assn.,* 49 Ill.2d 234, 274 N.E.2d 1; *Maryland Cas. Co. v. Howe,* 106 N.H. 422, 213 A.2d 420; *Nelson v. Employers Mut. Cas. Co.,* 63 Wis.2d 558, 217 N.W.2d 670. We think that under a statute like our § 516A.1, *standing alone,* the majority rule more likely reflects legislative intent.

■ Neither of the foregoing lines of cases involves statutes like our second provision, § 516A.2. We find most persuasive, therefore, a third line of decisions involving statutes which authorize clauses preventing overlapping benefits. E. g. *Keeble v. Allstate Ins. Co.,* 342 F.Supp. 963 (E.D.Tenn.); *Prieto v. State Farm Mut. Auto. Ins. Co.,* 268 Cal.App.2d 891, 74 Cal.Rptr. 472. These decisions give effect to those statutes and uphold anti-stacking clauses in policies. We think our § 516A.2 must be given similar effect.

■ Had the uninsured motorist here actually been insured in the minimum amount required by § 321A.1(10)—$10,000–$20,000 —the administrator would have been able to collect $10,000 from that motorist's insurer by following the course provided in our direct-action statute, chapter 516, Code 1975. The first sentence of § 516A.2 states that chapter 516A shall not be construed as requiring forms of coverage, whether alone or *in combination with similar coverage under other motor vehicle liability policies,* to afford limits exceeding those which would have existed had the injured person been hurt by a person who possessed insurance in the minimum limits required by § 321A.1(10). The legislature must have had some purpose in adding this provision, and the purpose appears to be to allow the uninsured motorist policy, *in combination with similar policies,* to provide the minimum limits of § 321A.1(10), or $10,000–$20,000.

The second sentence of § 516A.2 buttresses this conclusion. That sentence expressly permits forms of coverage to include "terms, exclusions, limitations, conditions, and offsets" which are designed to avoid "duplication of insurance and other benefits."

The Tennessee statute corresponding to § 516A.2 has been held to permit clauses which make available but one coverage of uninsured motorist insurance. *Shoffner v. State Farm Mut. Auto. Ins. Co.,* 494 S.W.2d 756, 759 (Tenn.) ("The statutory language clearly reflects the fundamental legislative design that the insured be placed in as good a position as, but no better position than he would occupy if he had been injured by an

individual who complied with the financial responsibility law [ch. 321A in Iowa]"); *Keeble v. Allstate Ins. Co.,* 342 F.Supp. 963, 967 (E.D.Tenn.) ("Plaintiffs argue that the foregoing statute was intended to permit setoffs for medical payments and allied losses otherwise due under a single policy and did not encompass duplication by other insurance policies. This position is untenable in light of the express provision in the first sentence of the statute [§ 56–1152] 'whether alone or *in combination* with similar coverage afforded *under other automobile liability policies.*' (Emphasis added.) The effect of Section 56–1152 is to permit an insuror to limit uninsured motorist coverage to the minimum coverage required by Section 59–1206 T.C.A. [corresponding to our § 321A.1(10)]"). See also *State Farm Mut. Auto. Ins. Co. v. Barnette,* 485 S.W.2d 545 (Tenn.); *State Auto Mut. Ins. Co. v. Cummings,* 519 S.W.2d 773 (Tenn.).

■ The other insurance clauses before us do not purport to reduce the uninsured motorist insurance below the statutory minimum of $10,000 for each person and $20,000 for each accident. We hold that they are valid under § 516A.2.

B. The second question under the other insurance clauses is whether the pertinent paragraphs of one or both of them *apply* in the present circumstances so as to restrict the administrator's maximum recovery to $10,000.

■ Employers Mutual's other insurance clause consists of two paragraphs. The first one does not apply here by virtue of its language. First, it applies when the injured person was riding in an automobile "not owned by the named insured," whereas McClure *was* riding in an automobile owned by the named insured (Creston). Second, the paragraph applies when other insurance is applicable as "primary insurance." The authorities are clear that McClure's policy on his own car, which was not involved in the accident, would not be "primary" insurance. *Jones v. Morrison,* 284 F.Supp. 1016 (W.D.Ark.); *Chicago Ins. Co. v. American*

*Southern Ins. Co.,* 115 Ga.App. 799, 156 S.E.2d 143; *Whitmire v. Nationwide Mut. Ins. Co.,* 254 S.C. 184, 174 S.E.2d 391; 16 Couch, Insurance 2d (1966) § 62:60 at 508–509.

The second paragraph of Employers Mutual's other insurance clause makes that insurer's insurance "pro rata" insurance. That paragraph begins, "Except as provided in the foregoing paragraph. . . ." We have seen that the "foregoing paragraph" is inapplicable. The second paragraph then makes its applicability dependent on the presence of "other similar insurance available to [the insured] and applicable to the accident". The question, therefore, is whether Motor Club's insurance is "available" and "applicable" so as to render Employers Mutual's second paragraph operative. We will take up that question after considering Motor Club's other insurance clause.

We approach the three paragraphs in Motor Club's clause in reverse order. The third paragraph begins, "Subject to the foregoing paragraphs. . . ." As we shall see, the first paragraph governs; hence the third paragraph does not apply. The second paragraph applies when the injured person is a "named insured" under other similar insurance, but McClure does not fit this description. Hence the second paragraph is inapplicable.

The first paragraph of Motor Club's other insurance clause requires that the injured person occupy an automobile not owned by the named insured (McClure). This requirement was met; McClure occupied an automobile owned by Creston. The paragraph then makes Motor Club's insurance "excess" insurance over "any other similar insurance available to [the insured]". To determine whether this paragraph comes into operation, therefore, we must know whether Employers Mutual's insurance is "available."

■ We thus have a situation in which a pro rata stipulation and an excess stipulation collide. The rule in Iowa and in most

jurisdictions is that the excess stipulation prevails; the policy with the excess stipulation is *not* "other similar insurance" as to the pro rata stipulation, but the policy with the pro rata stipulation *is* "other similar insurance" as to the excess stipulation. *Burcham v. Farmers Ins. Exch.,* 255 Iowa 69, 121 N.W.2d 500. See also *Allied Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.,* 257 Iowa 100, 131 N.W.2d 798; *Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co.,* 254 Iowa 68, 116 N.W.2d 434; *Priester v. Vigilant Ins. Co.,* 268 F.Supp. 156 (S.D.Iowa); *Imperial Cas. & Indem. Co. v. Mutual Fire & Auto. Ins. Co.,* 252 F.Supp. 906 (S.D.Iowa); Annot. 76 A.L.R.2d 502; 16 Couch, Insurance 2d (1966) § 62.71 at 518 ("As a general rule it is held that where an excess clause and a prorata clause appear in concurrently effective automobile liability policies, the prorata clause is disregarded and full effect is given to the excess clause"), § 62:72 at 519; 2 Long, Law of Liability Insurance (1975) § 22.08 at 22–16.

The result is that Motor Club's insurance is *not* available and applicable insurance as required by the second paragraph of Employers Mutual's other insurance clause in order to make that paragraph apply. That paragraph is therefore inapplicable. But Employers Mutual's insurance *is* available insurance within the first paragraph of Motor Club's other insurance clause. That paragraph is therefore applicable, and it restricts the administrator's maximum recovery to $10,000.

We thus hold that the administrator's maximum recovery in any case is $10,000—plus interest and costs. We also hold as a concomitant that by virtue of Motor Club's superior excess stipulation, Employers Mutual is solely liable to the administrator for any amount due and that Motor Club and its policy are out of the case.

II. *The Workmen's Compensation Clause.* We proceed to Employers Mutual's workmen's compensation clause. To determine whether the workmen's compensation of $10,094.17 is deductible from Employers Mutual's uninsured motorist insurance, we must consider two phrases in the second sentence of § 516A.2: "to avoid duplication" and "of insurance or other benefits."

We take up the two phrases in reverse order. Does workmen's compensation constitute "insurance or other benefits"?

A. On the question of the deductibility of workmen's compensation generally, the courts are divided. In considering statutes like § 516A.1 alone, some courts hold workmen's compensation nondeductible and some hold it deductible. Compare *Waggaman v. Northwestern Security Ins. Co.,* 16 Cal.App.3d 571, 94 Cal.Rptr. 170; *Ullman v. Wolverine Ins. Co.,* 48 Ill.2d 1, 269 N.E.2d 295, and *Hackman v. American Mut. Liab. Ins. Co.,* 110 N.H. 87, 261 A.2d 433, with *Travelers Ins. Co. v. National Farmers Union Property & Cas. Co.,* 252 Ark. 624, 480 S.W.2d 585; *Brunmeier v. Farmers Ins. Exch.,* 296 Minn. 328, 208 N.W.2d 860, and *Steinhaeufel v. Reliance Ins. Cos.,* 495 S.W.2d 463 (Mo.App.). We find the decisions more persuasive which hold that workmen's compensation cannot be deducted from uninsured motorist insurance in the absence of manifestation of legislative intent that it may. We must therefore consider whether the second sentence of § 516A.2, read in the light of 516A.1, constitutes such a manifestation of legislative intent.

Employers Mutual contends, of course, that the phrase "of insurance or other benefits" in the second sentence of § 516A.2 authorizes policy clauses for deduction of workmen's compensation. The words "and other benefits," following the word "insurance" as they do, are broad words. What "insurance and other benefits" is the legislature referring to here?

This specific question was before the Tennessee Supreme Court in *Terry v. Aetna Casualty & Surety Co.,* 510 S.W.2d 509. Vernon Lee Terry died in a motor vehicle collision with an uninsured motorist. Workmen's compensation of $10,080.26 was paid Terry's widow on account of his death.

The widow then obtained judgment against the uninsured motorist for $100,000 for wrongful death, but did not collect the judgment. Aetna insured the vehicle occupied by Terry under a policy which contained uninsured motorist insurance to a limit of $10,000 and a clause for deduction of workmen's compensation identical to the one in Employers Mutual's policy. As permitted by Tennessee law, the widow as such brought action against Aetna for the uninsured motorist insurance. The Tennessee Supreme Court held for Aetna; the workmen's compensation of $10,080.26 had to be deducted from the uninsured motorist insurance of $10,000. Under a statute like our § 516A.2, the court said at pages 513–514:

> It results, and we so hold, by enactment of T.C.A. § 56–1152 [our § 516A.2] as a section of our uninsured motorist statutes, it is the legislative purpose to provide an uninsured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum (T.C.A. § 56–1148) [our § 321A.1(10) for $10,000–$20,000], and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to an insured of less than the statutory minimum.

■ Following *Terry*, we hold that the words "insurance or other benefits" in the second sentence of § 516A.2 encompass workmen's compensation.

B. Then the question is whether the facts of the present case bring it within the "duplication" phrase of the second sentence of § 516A.2. As we understand that sentence, insurance or other benefits are deductible "to avoid duplication". Do we have duplication here which authorizes application of Employers Mutual's workmen's compensation clause to this case?

■ In *Terry* the workmen's compensation and uninsured motorist insurance were each payable under Tennessee law to the identical person, the widow as such; hence duplication of benefits existed. Here however the workmen's compensation was payable to the dependent widow under § 85.31 of the Code whereas the administrator is entitled to the uninsured motorist insurance by virtue of our survival statute, § 611.20 of the Code. Although in this case the personal representative and the widow happen to be the same individual, they are different legal entities. 34 C.J.S. Executors and Administrators § 707 at 692 ("within the eyes of the law such representative is a stranger to any right or liability which he may possess as an individual"). A dependent's right to workmen's compensation is a distinct claim. 58 Am.Jur. Workmen's Compensation § 167 at 689 ("A right to compensation conferred by statute upon the surviving relatives or dependents of a deceased employee, on account of his death, is ordinarily treated as separate and distinct from the right to compensation vested in such employee by reason of the injury. The amount payable to the death beneficiaries never becomes a part of the estate of the deceased, and is not liable for his debts, but is the exclusive property of the beneficiaries."); 99 C.J.S. Workmen's Compensation § 130 at 444, 445 ("The right to compensation rests on the obligation of the employer imposed by statute to pay the beneficiaries named therein, and implied in the contract of employment, and exists independently of rights or benefits in favor of the injured employee. In other words, the claim of dependent is a separate and distinct one. . . . The rights of claimants to dependency compensation are individual rights, and claims asserting such rights are separate claims.").

Here the insured's administrator who seeks uninsured motorist insurance has received no workmen's compensation; no "duplication" of insurance or benefits exists. Had the workmen's compensation of $10,-

094.17 been payable to McClure's administrator, we would have a situation comparable to the *Terry* case. But since the two amounts are payable to two distinct entities, Employers Mutual's workmen's compensation clause cannot be applied and uninsured motorist insurance of $10,000 remains payable to the administrator.

We return the case to district court for entry of judgment in the administrator's favor against Employers Mutual for $10,000, interest, and costs.

Costs in this court are taxed to Employers Mutual.

Affirmed in part, reversed in part, and remanded.

All Justices concur except McCORMICK, MASON and HARRIS, JJ., who concur specially, and REYNOLDSON, J., who takes no part.

McCORMICK, Justice (concurring specially).

I concur in the result and all but division IIA of the opinion. The implication of division II of the opinion is that workmen's compensation would have been deductible from the uninsured motorist coverage if the two coverages had been payable to the same person or entity. I disagree.

First, I do not believe a duplication of benefits would exist even if the coverages had been payable to the same person or entity. In *Benzer v. Iowa Mutual Insurance Ass'n*, 216 N.W.2d 385, 387 (Iowa 1974), we said § 516A.2 does not set a limit on maximum protection and "arguably could be construed as expressing only a legislative intent to prohibit the pyramiding of separate coverages to recover more than the actual damages." We have said chapter 516A is written to protect the insurance consumer, not the policy vendor. *Rodman v. State Farm Mutual Automobile Ins. Co.*, 208 N.W.2d 903, 909 (1973). Under this principle, I would hold the second sentence of § 516A.2 never comes into play except to avoid pyramiding which would permit the

injured person or entity to recover more than the actual damages. Here the actual damages were $30,000. The uninsured motorist coverage and workmen's compensation payment together total $20,094.17. Even if these payments went to the same person, that person would receive far less than actual damages. No duplication of insurance or other benefits would exist.

Second, I do not think the terms "insurance or other benefits" in § 516A.2 encompass workmen's compensation, because I believe the legislature obviously intended those terms to include only payments which purport to compensate the injured person for tort damages. The majority's application of § 516A.2 to permit operation of the "other insurance" clause in the Motor Club policy is the kind of situation plainly contemplated by the legislature. If such statutory payments as workmen's compensation are deductible, what about Medicaid or A.D.C. benefits? And what about private contractual accident and life insurance benefits? I do not believe the kinds of insurance and other benefits which are deductible from uninsured motorist coverage include statutory or private contractual benefits which do not purport to compensate the injured person for tort damages.

Unlike the majority, I find the Tennessee case, *Terry v. Aetna Casualty & Surety Co.*, 510 S.W.2d 509 (Tenn.1974), unpersuasive and would not follow it.

HARRIS and MASON, JJ., join this special concurrence.