**TRI-STATE INSURANCE COMPANY OF MINNESOTA, Appellee,**

v.

**Denise De GOOYER as the Administrator of the Estate of Veryl Dean De Gooyer, Deceased, Appellant.**

No. 85–594.

Supreme Court of Iowa.

Dec. 18, 1985.

Randall A. Roos, Sioux Center, for appellant.

H.R. Grigg of Smith, Grigg, Shea & Klinker, P.C., Primghar, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

The determinative issue in this appeal is whether an underinsured motorist provision which prevents the "stacking or pyramiding" of coverages is a valid limitation under Iowa Code section 516A.2. The insurance policy in question provided under-insurance motorist coverage on each of the insured's two vehicles. After the insured was killed in an automobile accident, the insurer brought a declaratory judgment action seeking to limit its liability to the face amount of a single coverage under its policy. The district court construed section 516A.2 to permit the insurer to prohibit, under its underinsured motorist provision, the "stacking" of multiple vehicle coverag-

es and entered judgment in favor of the insurer. We affirm.

The facts are undisputed. Veryl De Gooyer was insured by Tri-State Insurance Company of Minnesota (insurer) under a policy that provided insurance coverages on two separate vehicles. The declaration page of the policy revealed that both vehicles were insured for "underinsured motorist" coverage with a "limit of liability" in the amount of "$55,000 each person." This coverage provided the insured protection for bodily injury resulting from an accident with an underinsured motorist.

On October 13, 1984, Veryl Dean De Gooyer was killed in an automobile accident caused by another motorist who carried $50,000 liability insurance coverage. At the time of the accident decedent was operating a vehicle that he did not own. The insured's death was caused by the negligence of the other motorist. The parties agree that decedent's estate was damaged in the amount of at least $160,000 by his wrongful death. After credit was given for the other motorist's liability coverage of $50,000, decedent's estate remained underinsured for at least $110,000.

The insurer commenced declaratory judgment action against Denise De Gooyer, administrator of decedent's estate, seeking to determine the extent of its liability. The insurer alleged the extent of its liability was determined by the "Limit of Liability" provision contained in the underinsured motorist endorsement which in pertinent part provides:

> The limit of liability shown in the Schedule [Declaration Page] for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
>
> .    .    .    .    .
>
> 3. Vehicles or premiums shown in the Declarations; ...

In its amended and substituted petition the insurer requested the district court declare its liability to the administrator be $55,000, the amount shown on the declaration page.

In her answer and counterclaim, the administrator alleged that the $55,000 coverage on *each* vehicle was available to satisfy the underinsured loss, for a total of $110,000 recoverable from the insurer. Relying upon our decisions in *McClure v. Employers Mutual Casualty Company,* 238 N.W.2d 321 (Iowa 1976), and *Holland v. Hawkeye Security Insurance Company,* 230 N.W.2d 517 (Iowa 1975), the district court concluded that under the terms of the underinsured motorist provision, the "stacking" of coverages was validly prohibited.

■ On appeal the appellant claims that because the insured's two vehicles were separately insured the coverage limit for *each* vehicle should be combined or "stacked" up to the amount of the underinsured loss. Appellant does not contend that the "Limit of Liability" provision in the underinsured motorist provision is ambiguous or unclear. This provision plainly limits the maximum amount of liability for any one accident to the limit of liability shown in the declaration. The declaration page sets out the liability limit for underinsured motorist coverage to be $55,000 per person for each occurrence. The genuine dispute between the parties is whether this policy limitation is in accord with our statutory requirements for underinsured motorist coverage.

■ Initially, what effect does a statute have on an insurance contract? A statute that authorizes a contract of insurance has application beyond merely permitting or requiring such a policy. The statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy. *Rohret v. State Farm Mutual Automobile Insurance Company,* 276 N.W.2d 418, 419 (Iowa 1979). The terms of the policy are to be construed in light of the purposes and intent of the applicable statute. *American States Insurance Company v. Estate of Tollari,* 362 N.W.2d 519, 521 (Iowa 1985); *Benzer v. Iowa Mutual Tornado Insurance Association,* 216 N.W.2d 385, 388 (Iowa 1974).

Iowa code chapter 516A authorizes automobile insurance coverage for protection against injuries caused by underinsured motorists and uninsured motorists or hit-and-run vehicles. § 516A.1. It is mandatory that such coverage [1] be provided by a motor vehicle liability insurance policy unless such coverage is rejected by the insured. *Id.* The focal point of the parties' dispute rests on the intendment of section 516A.2 which provides:

> Except with respect to a policy containing both underinsured motor vehicle coverage and uninsured or hit-and-run motor vehicle coverage, nothing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

The insurer maintains that the last sentence in 516A.2 clearly authorizes a limitation to prevent stacking of coverages that it placed in its policy. On the other hand, appellant urges that "duplication of insurance or other benefits" was intended by the legislature to prevent an actual duplication of compensation for the same loss, or a double recovery.

As indicated by the trial court, we have previously addressed the issue of stacking policies. In *McClure* we examined how section 516A.2 (1975) applied to uninsured, rather than underinsured, motorist coverage. 238 N.W.2d at 326–27. In *McClure* the decedent insured carried uninsured motorist coverage on his own vehicle and such

insurance also covered him while he was in other vehicles. He was killed in an accident while riding as a passenger in another vehicle that was hit by an uninsured motorist. Decedent was also covered under his driver's uninsured coverage. When his estate attempted to collect from both uninsured coverages, we held that the estate could not "stack" the two coverages and collect on both policies. *McClure,* 238 N.W.2d at 326. We determined that section 516A.2 (1975) permitted the insurer to provide limitations on the insured's motorist coverage which were designed "to provide the minimum limits" and to avoid "duplication of insurance and other benefits." *Id.*

At the time of our ruling in *McClure,* Iowa Code sections 516A.1 and .2 only applied to uninsured or hit-and-run motorist coverage. Later, in 1980, the legislature amended those sections to include "underinsured motorist" coverage and granted the insured an option to reject the coverages. 1980 Iowa Acts ch. 1106, §§ 6, 7.

While appellant concedes that our decisions have approved policy limitations that prevent "stacking" of insurance coverages pursuant to chapter 516A, she points out that these cases apply to uninsured, rather than underinsured, motorist coverage. *McClure,* 238 N.W.2d at 326; *Holland,* 230 N.W.2d at 520–21. Appellant argues that the legislative purpose of underinsured motorist coverage is different from that for uninsured motorist coverage. She asserts that uninsured coverage is designed to assure some statutory minimum compensation. On the other hand, she cites our recent holding in *Tollari* and contends that the legislative purpose of underinsured coverage is to provide a fuller compensation to victims of underinsured motorists. Consequently, she concludes that when underinsured motorist coverage is involved, section 516A.2 only allows limitations that prevent duplication of benefits rather than "stacking" of coverages.

1. The limits for bodily injury or death must at least equal those set forth in Iowa Code section 321A.1(10), which are a minimum of $20,000 per person or $40,000 per accident.

We agree that there is a difference between uninsured and underinsured motorist coverage. We have carefully set out the differences in *Tollari*, 362 N.W.2d at 521–22 (citing *Detrick v. Aetna Casualty & Surety Company*, 261 Iowa 1246, 1253, 158 N.W.2d 99, 105 (1968)). In *Tollari* we concluded that the legislature "contemplated that a buyer of underinsurance coverage is entitled to recover on that clause for the amount of his loss that the tortfeasor's liability insurance does not reach, subject to the limit of the underinsurance clause." 362 N.W.2d at 522. We then cited *McClure* with approval and stated further that "if the tortfeasor has some liability insurance but insufficient to pay the loss fully, the plaintiff can, under his own underinsured motorist coverage, recover his loss from the tort less the tortfeasor's available liability insurance proceeds, *subject to the limit of that underinsured coverage*—again assuming no duplication of benefits exists." *Id.* (emphasis in original). In *McClure* we buttressed our conclusion that an insurer could limit its coverage to prevent "stacking" by relying on the second sentence of section 516A.2 and its language that expressly allows such limitations "which are designed to avoid '*duplication of insurance and other benefits.*'" 238 N.W.2d at 326 (emphasis added). Our "assuming that no duplication of benefits exists" language in *Tollari*, 362 N.W.2d at 522, indicates that we will allow the imposition of the same limitation on underinsured coverages as we do upon uninsured coverages.

When the legislature amended Iowa Code sections 516A.1 and .2 to include underinsured motor vehicle coverage, the only change made to section 516A.2 was the addition of an introductory phrase now contained in the statute's first sentence. 1980 Iowa Acts 410 ch. 1106, § 7. Otherwise, the statute has remained the same as when we interpreted it in *McClure*.

A revision will not be construed as altering a particular statute absent a clear, unmistakable legislative intent. *Le Mars Mutual Insurance Company of Iowa v. Bonnecroy*, 304 N.W.2d 422, 424 (Iowa 1981).

In construing statutes we assume that the legislature was aware of our construction of the statute as it applied to uninsured motorist, and if it sought to remedy specific evils it would have clearly so indicated. *See Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980). When underinsured coverage was included in chapter 516A, the legislature gave no indication or clear signal that the last sentence in section 516A.2 would not be applicable to the new coverage. As the statute now reads, an insurer may indeed provide for limitations designed to prevent the stacking of insurance benefits.

In summary, we hold that decedent's policy clearly limited its underinsured motorist coverage in this case to $55,000. We further hold that this limitation is permitted under section 516A.2.

AFFIRMED.