Jack L. MEWES and Jane
M. Mewes, Appellants,

v.

STATE FARM AUTOMOBILE INSUR-
ANCE COMPANY, INC., an Illi-
nois Corporation, Appellee.

No. 93–1649.

Supreme Court of Iowa.

April 26, 1995.

Stephen A. Rubes, Council Bluffs, for appellants.

Darrell J. Isaacson of Laird, Heiny, McManigal, Wings, Duffy & Stambaugh, P.L.C., Mason City, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

SNELL, Justice.

In this case, Jane M. and Jack L. Mewes appeal a district court decision which granted summary judgment in favor of the State Farm Automobile Insurance Company. At issue is the propriety of State Farm policy provisions which limited the Mewes' total recovery of underinsurance coverage to an amount equal to the highest applicable State Farm policy limit rather than to an amount that would have provided them full compensation. The district court held State Farm's policies only applied to the extent the highest limit of the State Farm policies exceeded the underinsured motorist coverage provided by the primary insurer. Since the highest limit on a State Farm policy equaled the amount the primary insurer paid, the district court held that State Farm was not responsible for any additional amount. We affirm.

### I. Factual and Procedural Background

On July 30, 1991, a vehicle driven by Rhonda Groesbeck struck from behind a vehicle being driven by Tammy Kraft in Cerro Gordo County, Iowa. The vehicle being driven by Tammy Kraft was owned by Dana Kraft. Jane Mewes was a passenger in the Kraft vehicle and sustained serious personal injuries as a result of the accident.

At the time of the accident, the Krafts carried an IMT Insurance Company policy which provided underinsured motorist insurance and medical payments coverage. This policy covered Jane Mewes as a passenger in the Kraft vehicle. The underinsured motorist coverage limit under this policy was $50,000. Three insurance policies issued by State Farm also covered the Mewes. Two of these policies held underinsured motorist limits of $20,000 and the third policy carried an underinsured motorist policy limit of $50,000. The vehicles the three State Farm policies covered were not involved in the accident.

Mewes and her husband, Jack, brought an action against Groesbeck and Tammy and Dana Kraft alleging that both Tammy Kraft and Groesbeck were negligent and the negligence of each proximately caused Jane's injuries. Jack Mewes' claims were based on loss of consortium. Shortly after bringing suit, the Mewes filed an amended petition which joined IMT and State Farm as parties.

In their amended petition, the Mewes alleged they had complied with all the terms and conditions of the State Farm policies, but State Farm had in bad faith failed to make any payments under the policies. The Mewes sought recovery from State Farm for the amount of their total damages which IMT's policy did not cover and also sought punitive damages. State Farm responded to the Mewes' petition by denying that it owed them any underinsured motorist coverage due to "antistacking" and "excess" provisions in the Mewes' policies. State Farm's policies contained the following pertinent "other insurance" provisions:

If There is Other Underinsured Motor Vehicle Coverage

. . . .

3. If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative, this coverage applies:

    a. as excess to any underinsured motor vehicle coverage which applies to the vehicle as primary coverage, but

    b. only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable as excess to the accident.

Relying on these provisions, State Farm asserted it was only responsible to the Mewes for any amount by which its highest policy limit exceeded IMT's policy limit.

Groesbeck carried liability insurance for bodily injury provided by the Midwest Mutual Insurance Company. Midwest paid its policy limit of $20,000 to the Mewes in settlement for claims the Mewes brought against Groesbeck. IMT settled with the Mewes for their underinsured motorist policy limit of $50,000.

Only State Farm remained as a defendant in the case. The Mewes filed a motion for partial summary judgment against State Farm on the ground that no material fact existed on the issue of State Farm's responsibility to pay the Mewes underinsured motorist benefits and the Mewes were entitled to these payments as a matter of law. State Farm filed a resistance to the Mewes' motion and filed its own motion for summary judgment. State Farm sought summary judgment on the ground that its policy and Iowa statutory law did not require it to pay any underinsurance benefits because IMT already paid the Mewes its policy limit of $50,000 for underinsured benefits, and State Farm's policy limits did not exceed that amount. State Farm asserted that to require State Farm to pay additional underinsured benefits would amount to "stacking" of coverage in contravention of the applicable policy and statutory law.

Following a hearing, the district court denied the Mewes' motion and granted State Farm's motion. The court held that State Farm was entitled to summary judgment because the clear intent of the relevant section of the Iowa Code was to prohibit inter-policy stacking and therefore, State Farm was only responsible for any amount by which its highest policy limit exceeded IMT's policy limit. Since State Farm's highest policy limit, $50,000, did not exceed IMT's $50,000 policy limit, the court held State Farm was not responsible for payment of any underinsured motorist benefits.

The Mewes have appealed to this court. On appeal, they assert summary judgment in favor of State Farm was inappropriate for three reasons. First, the Mewes contend Iowa Code section 516A.2 (1993) does not prohibit payment by both IMT and State Farm in this case because the exception located in 516A.2(1) states that the section's antistacking provisions do not apply to policies which contain both uninsured and underinsured motor vehicle coverage and IMT's policy includes both types of coverage. Second, if section 516A.2, as applied to this situation, only allowed recovery up to the highest underinsured motor vehicle policy limit, this would violate the purpose of underinsured motorist coverage which is to provide full compensation to victims to the extent of the injuries suffered. Finally, if section 516A.2 is applicable to the case at hand, the second unnumbered paragraph of section 516A.2(1), which expressly overrules our decision in *Hernandez v. Farmers Insurance Co.*, 460 N.W.2d 842 (Iowa 1990), does not prohibit payment of additional underinsured benefits by State Farm because this express statement in section 516A.2(1) only holds that interpolicy stacking is prohibited when the different policies at issue are all written by the same insurer.

## II. Standard and Scope of Review

We review a district court grant of a motion for summary judgment for errors of law. Iowa R.App.P. 4; *Ciha v. Irons*, 509 N.W.2d 492, 493 (Iowa 1993); *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991); *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 847 (Iowa 1990). We consider the evidence in the entire record in the light most favorable to the non-movant and determine whether any issue as to any material fact exists. *Ciha*, 509 N.W.2d at 493; *West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598

(Iowa 1993). Summary judgment is appropriate if no issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Ciha,* 509 N.W.2d at 493; *West Bend Mut. Ins.,* 503 N.W.2d at 598.

### III. Issues on Appeal

■ The facts of this case are not in dispute and the issues the Mewes raise involve the construction of their State Farm insurance policies and the application of Iowa Code section 516A.2 to this matter. When we construe the underinsured motorist provisions of an insurance policy, section 516A.2 forms a basic part of the policy and we treat section 516A.2 as if the parties had actually written it into the policy. *Rodish v. State Farm Mut. Auto. Ins. Co.,* 501 N.W.2d 514, 515 (Iowa 1993); *Veach,* 460 N.W.2d at 847; *Tri–State Ins. Co. v. De Gooyer,* 379 N.W.2d 16, 17 (Iowa 1985). We construe the insurance policy in light of the purposes and intent of section 516A.2. *Veach,* 460 N.W.2d at 847; *Tri–State,* 379 N.W.2d at 17.

■ Resolution of the matter at ·hand ultimately depends on our interpretation of section 516A.2. In construing statutes, our goal is to determine and give effect to the legislature's intention. *State v. Sullins,* 509 N.W.2d 483, 485 (Iowa 1993). We seek a reasonable interpretation which will best effectuate the purpose of the statute and redress the wrongs the legislature sought to remedy. *Id.; Krueger v. Iowa Dep't of Transp.,* 493 N.W.2d 844 (Iowa 1992). We will consider all parts of an enactment together and will not place undue importance on any single or isolated portion. *General Elec. v. Iowa State Bd. of Tax Review,* 492 N.W.2d 417, 420 (Iowa 1992).

Section 516A.2, "Construction—minimum coverage—stacking," provides in relevant part:

1. Except with respect to a policy containing both underinsured motor vehicle coverage and uninsured or hit-and-run motor vehicle coverage, nothing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

To the extent that *Hernandez v. Farmers Insurance Company,* 460 N.W.2d 842 (Iowa 1990), provided for interpolicy stacking of uninsured or underinsured coverages in contravention of specific contract or policy language, the general assembly declares such decision abrogated and declares that the enforcement of antistacking provisions contained in a motor vehicle insurance policy does not frustrate the protection given to an insured under section 516A.1.

. . . .

3. It is the intent of the general assembly that when more than one motor vehicle insurance policy is purchased by or on behalf of an injured insured and which provides uninsured, underinsured, or hit-and-run motor vehicle coverage to an insured injured in an accident, the injured insured is entitled to recover up to an amount equal to the highest single limit for uninsured, underinsured, or hit-and-run motor vehicle coverage under any one of the above described motor vehicle insurance policies insuring the injured person which amount shall be paid by the insurers according to any priority of coverage provisions contained in the policies insuring the injured person.

■ The Mewes initially argue that the antistacking provisions of section 516A.2 do not apply to this case because the Mewes' State Farm policies contained both underinsured and uninsured motorist coverage. The Mewes assert that the exception contained in the first sentence of section 516A.2(1) pro-

vides that when an applicable policy contains both underinsured and uninsured motor vehicle coverage, chapter 516A requires all of the coverages to be given effect. State Farm asserts that the Mewes' interpretation of the first sentence of section 516A.2(1) is in error because the Mewes' interpretation would allow stacking of coverage in most insurance policies issued in Iowa since most contain both underinsured and uninsured motorist coverage. Although the trial court did not address this specific question and the Mewes did not raise it in their motion for summary judgment, State Farm has not challenged the Mewes' preservation of this specific contention for our review. *See State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206–07 (Iowa 1984); *Smith v. Air Feeds, Inc.*, 519 N.W.2d 827, 832 (Iowa App.1994).

At the outset, we note that the exception contained in section 516A.2(1) does not carry the meaning the Mewes assert. The legislature added the exception language in question in 1980 when it amended sections 516A.1 and .2 to include underinsured motorist coverage. *Tri–State*, 379 N.W.2d at 19. Prior to 1980, these sections only applied to uninsured and hit-and-run motorist insurance coverage. *Id.*

We said in *Tri–State*:

When the legislature amended Iowa Code sections 516A.1 and .2 to include underinsured motor vehicle coverage, the only change made in section 516A.2 was the addition of an introductory phrase now contained in the statute's first sentence. 1980 Iowa Acts 410 chapter 1106, section 7. Otherwise, the statute has remained the same as when we interpreted it in *McClure.*

*Tri–State*, 379 N.W.2d at 19.

In *McClure v. Employers Mutual Casualty Co.*, 238 N.W.2d 321 (Iowa 1976), a case involving uninsurance, we determined that Iowa Code section 516A.2 (1975) permitted an insurer to provide limitations on the insured's motorist coverage which were designed to provide the minimum limits in order to avoid duplication of insurance and other benefits. In referring to *McClure*, we noted in *Tri–State* that a revision will not be construed as altering a particular statute ab-

sent a clear, unmistakable legislative intent. *Tri–State*, 379 N.W.2d at 19. We further stated:

In construing statutes we assume that the legislature was aware of our construction of the statute as it applied to uninsured motorists, and if it sought to remedy specific evils it would have clearly so indicated. *See Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980). When underinsured coverage was included in chapter 516A, the legislature gave no indication or clear signal that the last sentence in section 516A.2 would not be applicable to the new coverage. As the statute now reads, an insurer may indeed provide for limitations designed to prevent the stacking of insurance benefits.

*Tri–State*, 379 N.W.2d at 19. We hold that the legislature's intent in adding the exception to section 516A.2(1) was not to exclude from the antistacking provisions all policies which contain both underinsured and uninsured motorist coverage.

▪ The Mewes' second argument on appeal is that application of section 516A.2 in accordance with the district court's interpretation will result in a frustration of the policy goals surrounding underinsurance. State Farm contends that although the result may seem unduly harsh, the clear language of section 516A.2 demonstrates the general assembly intends underinsurance policy language limiting interpolicy stacking to be effective.

We have held in the past that the purpose of underinsured motorist coverage is full compensation to the victim to the extent of the injuries suffered. *Veach*, 460 N.W.2d at 848; *Hernandez*, 460 N.W.2d at 844; *McClure v. Northland Ins. Cos.*, 424 N.W.2d 448, 450 (Iowa 1988); *Tri–State*, 379 N.W.2d at 19; *American States Ins. Co. v. Estate of Tollari*, 362 N.W.2d 519, 522 (Iowa 1985). We have referred to this as the "broad coverage" view. *Veach*, 460 N.W.2d at 848; *Northland*, 424 N.W.2d at 449. We have therefore held that an injured party is entitled to recover from her own underinsurance policy the amount of her loss that the carrier's liability insurance does not reach, subject

to the policy limit of the injured party's underinsurance coverage. *Tollari*, 362 N.W.2d at 522; *see also Northland*, 424 N.W.2d at 450.

An alternative view of insurance coverage is the "narrow coverage" view. *Veach*, 460 N.W.2d at 848; *Northland*, 424 N.W.2d at 449. Under a narrow coverage view of underinsurance policies, the goal of underinsurance is merely to place victims in the same position in which they would have been had they been injured by motorists carrying liability coverage equal to the limits of their own coverage. *Northland*, 424 N.W.2d at 449. Therefore, under a narrow coverage definition of underinsurance, any amount the injured party receives from another party's carrier is subtracted from the policy limit of the injured party's underinsurance policy, and the injured party's underinsurance carrier is only responsible for any difference between the coverage provided by the other carrier and the injured party's own highest policy limit. *Id.* We have traditionally applied this view to uninsured coverage, but not to underinsurance coverage. *Id.*

In *Hernandez*, we expressly applied broad coverage analysis to an insurer's policies which sought to limit an injured party's total underinsurance recovery to the maximum policy limit of the insurer's policies. *Hernandez*, 460 N.W.2d at 844. We held that since the insurer's antistacking provisions would have left the injured party without full compensation, the provisions were contrary to public policy and unenforceable. *Id.* at 844–45. The general assembly responded to this analysis in *Hernandez* by expressly abrogating the opinion to the extent that we held that interpolicy stacking of underinsured benefits could occur despite specific contract or policy language to the contrary. Iowa Code § 516A.2(1). In the unnumbered paragraph in section 516A.2(1), the legislature specifically stated that enforcement of limiting provisions such as those that exist in the policies at issue in the case before us, will not frustrate the protection section 516A.1 provides an insured. *Id.* The legislature's abrogation of *Hernandez* and section 516A.2(3)'s limitations on recovery under multiple policies demonstrate a clear inten-

tion on the part of the legislature to allow insurers to limit underinsured motorist benefits. *Ciha*, 509 N.W.2d at 494.

For their final argument, the Mewes assert that the legislature's intention in abrogating *Hernandez* was narrow. They state their position in two ways. First, they argue that the legislature merely intended to disallow policy stacking in instances where one insurer wrote all the policies in question. Secondly, they claim that the holding in *Hernandez* does not apply to a policy purchased by third parties unrelated to the injured party. In other words, the Mewes contend that interpolicy stacking is still permitted under facts like those presented here where different policies issued by different insurers were purchased by the insured and unrelated third parties.

We easily reject the Mewes' argument that the amendment to section 516A.2 applies only where one insurer issued all the policies containing potentially applicable underinsurance coverages. Section 516A.2(3) provides that when underinsured coverage is limited under that section to an amount equal to the highest single limits for underinsured coverage, that amount "shall be paid by the *insurers* according to any priority of coverage provisions." (Emphasis added.) The reference to "insurers" clearly indicates the legislature's anticipation that multiple insurance companies would be involved in the prioritization of coverage required when antistacking provisions are enforced. Consequently, limitations on interpolicy stacking must apply even when the various policies are issued by different insurers.

The plaintiffs rely on the following language from the amendment to support their second argument:

3. It is the intent of the general assembly that when more than one motor vehicle insurance policy is purchased *by or on behalf of an injured insured* and which provides uninsured, underinsured or hit-and-run motor vehicle coverage to an insured injured in an accident, the injured insured [may not stack the coverages from the policies].

Iowa Code § 516A.2(3) (emphasis added). The Mewes point out that in *Hernandez,* the injured insured had purchased one policy and his mother, with whom he lived, had purchased the other two policies. Her policies included as an insured a relative residing in her household, *i.e.* her son. In contrast, only three of the policies involved here were purchased by the Mewes. The other policy was purchased by Kraft, the owner of the vehicle in which Jane Mewes was riding at the time of the accident. Kraft, they contend, is a third party unrelated to the Mewes. Based on this factual distinction, the Mewes argue that this case falls outside the holding of *Hernandez* and therefore, outside the abrogation of *Hernandez* by the legislature.

 We are unable to accept this limited view of the legislature's intent in abrogating our *Hernandez* decision. First, we think that a policy such as the one purchased by Kraft, which insured passengers in her vehicle, was purchased "on behalf" of any injured passenger within the meaning of section 516A.2(3). Additionally, in the statute abrogating *Hernandez,* the legislature declared "that the enforcement of the antistacking provisions contained in a motor vehicle insurance policy does not frustrate the protection given an insured under section 516A.1." *Id.* § 516A.2(1). This statement does not support an interpretation of section 516A.2(3) that would allow enforcement of antistacking provisions only part of the time. The Mewes have offered no reason why the antistacking provisions involved in *Hernandez* would not frustrate the protection given by section 516A.1 but the antistacking provisions involved here would.

We conclude section 516A.2 applies here. Therefore, the district court properly gave effect to the antistacking provisions in the applicable policies.

In this case, IMT was liable for primary coverage because its insured vehicle was the one involved in the accident. *Rodish,* 501 N.W.2d at 515. Given the intent of the legislature in section 516A.2 and the express language of State Farm's policies, we affirm the district court's holding that the State Farm policies were excess and only would have applied if a State Farm policy had carried a higher limit than the coverage the primary IMT policy provided. Since State Farm's highest policy limit, $50,000, did not exceed IMT's $50,000 limit, State Farm is not liable to the Mewes for any amount of legal damages the Mewes have been unable to recover. The district court's granting of State Farm's motion for summary judgment is affirmed.

AFFIRMED.