Gwenda SIEVERS, Appellant,

v.

**IOWA MUTUAL INSURANCE COMPANY, Appellee.**

No. 97–388.

Supreme Court of Iowa.

July 29, 1998.

Rehearing Denied Oct. 5, 1998.

Dorothy A. O'Brien of Brooke & O'Brien, P.L.C., Davenport, for appellant.

Robert D. Lambert of Carlin, Hellstrom & Bittner, Davenport, and Brendan T. Quann and Stephen C. Krumpe of O'Connor & Thomas, P.C., Dubuque, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

The plaintiff appeals from a summary judgment ruling on her claim against a former employer under the Family and Medical Leave Act (FMLA). She also appeals from a jury verdict on her claim under the Age Discrimination in Employment Act (ADEA). She contends genuine issues of material fact precluded summary judgment on her FMLA claim and the district court erred in instructing the jury on her ADEA claim. We affirm.

## I. Background Facts.

Gwenda Sievers worked for Iowa Mutual Insurance Company in the commercial lines department from 1974 until May 17, 1995, when she resigned at age fifty-four. Over the years, Sievers received high praise for her work ethic and her technical skills. Todd Boyer was Sievers' supervisor from 1986 to 1993. In his last evaluation of Sievers, Boyer noted that she put out more work than a typical employee in her department.

In June 1993, Iowa Mutual hired Susan Bledsoe who became Sievers' supervisor several months later. According to Sievers, Bledsoe treated younger employees better than she treated older employees. Sievers also claimed that Bledsoe mistreated her by being rude and abrupt when Sievers requested time off for family matters.

On Friday, May 12, 1995, Sievers' adult daughter, Debbie Diercks, suffered a seizure. Apparently, Diercks had suffered seizures in the past dating from a childhood head injury. Sievers asked Bledsoe for time off to accompany her daughter to South Dakota for chiropractic treatment.

Allegedly, Bledsoe reacted angrily to the request but in the end granted it. Sievers, however, did not make the trip. Other family members accompanied the daughter to South Dakota.

The following Monday, Sievers returned to work and remarked to a coemployee about Bledsoe's rude behavior the preceding Friday. Bledsoe heard about the remark and confronted Sievers about it. Sievers responded by telling Bledsoe that "things were not working out," she did not know if she could continue working for Bledsoe, and perhaps she—Sievers—should transfer to another department.

Sievers tried to meet with James Owens, who was Bledsoe's immediate supervisor, and John Howes, the personnel director. Neither man would meet with Sievers.

On Wednesday, May 17, Bledsoe met alone with Howes. The two discussed four options: Sievers could (1) transfer, (2) resign, (3) stay until she qualified for early retirement the following August at which time her employment would be terminated, or (4) stay in Bledsoe's department.

Later that day, Bledsoe met with Sievers and another employee. Bledsoe presented Sievers with only two options: Sievers could resign immediately or wait until August for early retirement. Sievers then signed a letter of resignation. According to Sievers, Bledsoe denied her request for time to consider the options. Iowa Mutual maintained that it terminated Sievers' employment because she "drew a line in the sand," and the company believed Bledsoe deserved to be supported in the power struggle Sievers created.

In July, a thirty-four year old employee transferred into the commercial lines department and assumed about sixty percent of Sievers' work load.

## II. Proceedings.

Sievers sued Iowa Mutual for age discrimination under both the Iowa Civil Rights statute and the federal ADEA. *See* Iowa Code ch. 216 (1993); 29 U.S.C. §§ 621–34 (1994). Sievers also alleged that Iowa Mutual retaliated against her for filing a claim with the Iowa Civil Rights Commission. Sievers based her retaliation claim on Iowa Mutual's alleged refusal to reemploy her when positions opened up. In addition, Sievers alleged that Iowa Mutual violated the federal FMLA by discouraging her from taking time off to accompany her daughter to South Dakota and forcing her to resign because of her request for time off. *See* 29 U.S.C. § 2615(a).

District judge David H. Sivright, Jr. granted Iowa Mutual summary judgment on Sievers' FMLA and retaliation claims. District judge James E. Kelley presided over the jury trial of Sievers' ADEA claim. The parties stipulated that the jury's verdict on the federal age discrimination claim would be binding on the state age discrimination claim. The jury returned a verdict in favor of Iowa Mutual.

Sievers appeals from the summary judgment ruling on her FMLA claim but does not appeal from the court's ruling on her retaliation claim. She also appeals from the judgment entered on the defense jury verdict on her ADEA claim.

## III. The Summary Judgment Ruling.

We review a district court grant of summary judgment for errors of law. *Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 721 (Iowa 1995). Summary judgment is appropriate only when the entire record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). A "genuine" issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Fees v. Mutual Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). A fact is "material" only if it is outcome determinative. *Id.* In reviewing summary judgment rulings, we consider the record evidence in the light

most favorable to the nonmoving party. *Mewes,* 530 N.W.2d at 721. The record includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Iowa R. Civ. P. 237(c).

**A. The FMLA.** The purpose of the FMLA is

(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;

(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;

(3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers;

(4) to accomplish the purposes described in paragraphs (1) and (2) in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and

(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

29 U.S.C. § 2601(b).

The FMLA pertinently provides that

an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

. . . .

(C) In order to care for . . . a . . . daughter . . . of the employee, if such . . . daughter . . . has a serious health condition.

*Id.* § 2612(a)(1).

The pertinent prohibited acts provisions of the FMLA provide:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

*Id.* § 2615.

**B. Whether Sievers was eligible for leave under the FMLA.** In its motion for summary judgment, Iowa Mutual alleged Sievers failed to show a genuine issue of material fact regarding whether she was eligible for leave under the FMLA. Although the district court did not base its ruling on this ground, we can address it. *See Bensley v. State,* 468 N.W.2d 444, 445 (Iowa 1991) (holding that appellate court can uphold a trial court's ruling on any ground appearing in the record, whether urged in the trial court or not).

One ground of Iowa Mutual's eligibility challenge is the efficacy of chiropractic treatment for seizures. We view the challenge as one calling into question whether the FMLA covers chiropractic treatment under the circumstances of this case. To answer this question, we need to analyze several provisions of the Act.

As mentioned, the FMLA provides qualified leave "[i]n order to care for" a family member (an adult daughter in this case) who "has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). As relevant here, § 2611(11) of the Act defines a "serious health condition" as

an illness, injury, impairment, or physical or mental condition that involves—

. . . .

(B) continuing treatment by a health care provider.

Under § 2611(6) of the Act,

[t]he term "health care provider" means—

(A) a doctor of medicine or osteopathy who is authorized to practice medicine or

surgery (as appropriate) by the State in which the doctor practices; or

(B) any other person determined by the Secretary to be capable of providing health care services.

There is no record proof that the chiropractor who treated Sievers' daughter qualified under § 2611(6)(A) as a doctor of medicine or osteopathy.

That leaves for our consideration whether the chiropractor qualified under § 2611(6)(B)—any other person determined by the Secretary to be capable of providing health care services.

A federal regulation defines "capable of providing health care services":

Others "capable of providing health care services" include only: ... (1) ... chiropractors (limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist) authorized to practice in the State and performing within the scope of their practice as defined under State law.

29 C.F.R. § 825.118(b).

Thus, for chiropractic treatment to qualify as health care services under the Act, an employee must establish the following:

(1) the chiropractor performing the treatment is authorized to practice in the state in which the treatment is performed;

(2) the treatment must be within the scope of the chiropractor's practice as defined under the law in the state where the chiropractor is practicing;

(3) the treatment must consist of manual manipulation of the spine to correct a subluxation; and

(4) X-rays must demonstrate the existence of the subluxation.

A subluxation is a misalignment of spinal segments. For example, a vertebra is misaligned in relation to the vertebrae above and below it. 4 Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., *Attorney's Textbook of Medicine* paras. 12.41, 12.41(1), at 12–20 (3d ed.1998). Contemporary chiropractic definitions of subluxation include three additional criteria:

(1) occlusion of a foramen;

(2) pressure on the nerves; and

(3) interference with transmission of nerve impulses.

*Id.* para. 12.41(1), at 12–20.

The summary judgment record on the chiropractic treatment included only a handwritten note from Ernuna Ortman, the chiropractor who treated Sievers' daughter. The note states:

I treated Debbie Diercks May 15, 16, 17, 18, 19. She has extreme tension in her cervical & upper dorsal area. She responded quite well to our manipulative therapy. I feel this condition produces fibro-myalgic ·symptoms but it is really more muscular tension & spasms.

We think this note fails to generate a genuine issue of material fact on the requirements to qualify chiropractic treatment for FMLA coverage purposes. For example, there was no showing that the chiropractor who treated Sievers' daughter was authorized to practice in South Dakota. Nor was there any showing that South Dakota law allowed the chiropractor to treat neurological disorders like seizures. *See Iowa Kemper Ins. Co. v. Cunningham*, 305 N.W.2d 467, 469 (Iowa 1981) (holding that court will not take judicial notice of foreign law that is neither pleaded nor proven). The record contained no X-rays to show that Sievers' daughter even suffered from a subluxation.

Given ·this record, we think the district court properly sustained Iowa Mutual's summary judgment motion on the FMLA claim. Sievers failed to generate a genuine issue of material fact on whether she was eligible for leave "to care for" an adult daughter with a "serious health condition." In short, Sievers neglected to produce any evidence her daughter's chiropractor was qualified as one "capable of providing health care services" to the daughter under the circumstances of this case.

## IV. The ADEA Claim.

Sievers contends the district court incorrectly instructed the jury on her ADEA claim. She contends the instructions taken as a whole are confusing, unfairly defense-oriented, and saddle her with nearly impossi-

ble burdens of proof. Iowa Mutual responds such a broadsided attack on the instructions fails to preserve error. Sievers also raises specific objections to various instructions the district court submitted to the jury. Iowa Mutual contends Sievers never made any of these specific objections in the district court. For these reasons, Iowa Mutual concludes Sievers preserved no error for our review.

■ We review objections to instructions on assigned error. Iowa R. Civ. P. 4; *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994). On appeal, we consider only those objections to instructions raised in the district court. Iowa R. Civ. P. 196; *Grefe & Sidney,* 525 N.W.2d at 824. To preserve error for our review, a party must specify the subject and grounds of the objection. Iowa R. Civ. P. 196; *Grefe & Sidney,* 525 N.W.2d at 824. The objection must be sufficiently specific to alert the district court to the basis of the complaint so that if there is error the court may correct it before submitting the case to the jury. *Grefe & Sidney,* 525 N.W.2d at 824. A party therefore may not amplify or change the grounds on appeal. *Moser v. Stallings,* 387 N.W.2d 599, 604 (Iowa 1986).

Like Iowa Mutual, we too have carefully compared Sievers' objections to the instructions in the district court with those she raises on appeal. We agree with Iowa Mutual that the objections she now raises—with the exception of two—are new or amplify the grounds she raised in the district court. The two exceptions, which we address shortly, relate to instruction nine, the marshaling instruction.

■ Although in the district court Sievers did characterize the instructions as "confusing, unfairly defense-oriented and improperly present[ing] nearly impossible burdens of proof to the plaintiff," we deem such a challenge too vague and generalized to preserve error. *See id.; Clausen v. R.W. Gilbert Constr. Co.,* 309 N.W.2d 462, 467 (Iowa 1981). Such a challenge does nothing to inform a trial judge *how* particular instructions were confusing, or were unfairly defense-oriented, or improperly placed on the plaintiff impossible burdens of proof.

■ **A. Whether instruction nine improperly incorporates allocation of burdens of production under *McDonnell Douglas.*** Sievers objected to instruction nine on two grounds, both of which she raises on appeal. She first complains instruction nine improperly incorporates the shifting burdens of production under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). She relies on *Grebin v. Sioux Falls Independent School District,* 779 F.2d 18, 20 (8th Cir.1985) (holding that in jury cases trial courts should not incorporate in instructions the three-part *McDonnell* analysis of prima facie case, answer, and rebuttal).

Recently, we described the elements of a prima facie case and allocation of the evidentiary burdens under a *McDonnell Douglas* type case:

> the plaintiff must first establish a prima facie case of discrimination—that he was a member of a protected class, performing his work satisfactorily, and had adverse action taken against him. The defendant must then articulate a legitimate nondiscriminatory reason for the action. Although the defendant need not establish this by a preponderance of the evidence, he must clearly set forth some legitimate nondiscriminatory basis for his action. If the defendant satisfies his burden of asserting a legitimate explanation, the burden then shifts to the plaintiff to prove the asserted reason is merely pretext and that the discriminatory motive played a substantial part in the actions taken.

*Vaughan v. Must, Inc.,* 542 N.W.2d 533, 538 (Iowa 1996) (citations omitted).

In *St. Mary's Honor Center v. Hicks,* the Supreme Court further explained burden shifting in the context of an age discrimination claim:

> Under the *McDonnell Douglas* scheme, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of ex-

planation" (here, the finding of unlawful discrimination). Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate nondiscriminatory reason." "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993) (citations omitted).

Instruction nine stated:

In this case, the plaintiff, Gwenda Sievers, must prove all of the following elements by a preponderance of the evidence:

1. The plaintiff was over 40 years of age;

2. The plaintiff, on and before May 17, 1995, met the defendant employer's job performance expectations;

3. The defendant constructively discharged the plaintiff; and

4. Plaintiff was replaced by a younger person after the discharge.

If the plaintiff has not proved any one of the above numbered elements by a preponderance of the evidence, your verdict must be for the defendant.

If plaintiff has proved all of these elements by a preponderance of the evidence, then you will determine whether the plaintiff's age was a determining factor in the decision to constructively discharge her, or whether the decision was based on a legitimate nondiscriminatory reason, as claimed by the defendant. If plaintiff has proved by a preponderance of the evidence that her age was a determining factor in the defendant's decision, then your verdict must be for the plaintiff; if she has not proved it, your verdict must be for the defendant.

Instruction nine is a correct statement of the law, containing all of the necessary elements detailed in *McDonnell Douglas*. The instruction correctly focuses on Sievers' ultimate burden of proving, at the risk of nonpersuasion, that Iowa Mutual constructively discharged her because of her age. *See St. Mary's*, 509 U.S. at 507, 113 S.Ct. at 2747, 125 L.Ed.2d at 416. Further, we fail to see where the instruction mentions any burden shifting formulation set out in *McDonnell Douglas* and as more fully explained in *Hicks*.

**B. Whether it was incorrect to include the element that plaintiff was replaced by a younger person.** The only other preserved claim of error also pertains to instruction nine. Sievers contends there was no need to include element four—plaintiff was replaced by a younger person after the discharge. In support of her contention, Sievers argues that the prima facie case analysis is necessary only to determine whether a plaintiff has generated a rebuttable presumption of age discrimination. She further argues that some federal cases hold that the plaintiff may create the presumption without meeting all of the elements of the *McDonnell Douglas* prima facie case analysis. The notion is that whether or not the position has been filled is irrelevant because the fact that the employee was not replaced weakens but does not eliminate the inference of discrimination. *See, e.g., Meiri v. Dacon*, 759 F.2d 989, 995–96 (2d Cir.1985).

The Eighth Circuit Court of Appeals has acknowledged this line of cases exists but has recently required federal district courts in its circuit to instruct juries on all elements of the prima facie case. *Kehoe v. Anheuser-Busch*, 96 F.3d 1095, 1105 (8th Cir.1996). As to the "replacement by a younger person" element, the same circuit has said:

The phrasing of this fourth prong reflects the United States Supreme Court's recent modification. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S.

308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433, 438 (1996). Many courts had previously required a plaintiff to show replacement by a worker outside the protected class, i.e., under the age of 40. Such a requirement is no longer permissible. As the *O'Connor* Court concluded, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Id.* *Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983, 988 n. 5 (8th Cir.1996).

We agree with the Eighth Circuit that trial courts should instruct juries on *all* elements of the prima facie case for an age discrimination claim. We note that the challenged instruction contains the "replacement by a younger person" element in accordance with *O'Connor.*

We conclude Sievers' two challenges to instruction nine are without merit.

Overall, the instructions are balanced, present correct statements of the law, and present fairly the issue of age discrimination. The district court patiently and painstakingly covered every proposed instruction with both counsel. In several instances, the court made changes suggested by Sievers' counsel. The court's questions of counsel and its discussion of pertinent cases convince us that the court had a good grasp of this difficult area of the law and the particular case before it.

## V. Disposition.

Sievers generated no genuine issue of material fact on her eligibility for leave under the FMLA. The district court therefore correctly sustained Iowa Mutual's summary judgment motion on Sievers' FMLA claim.

In addition, Sievers properly preserved for our review only two objections to the instructions in her ADEA claim, and both are without merit.

Finding no error, we affirm.

**AFFIRMED.**