# IN THE SUPREME COURT OF IOWA

No. 08–0391

Filed July 17, 2009

**KALE SWAINSTON** and **STEPHANIE SWAINSTON,**

   Appellants,

vs.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**

   Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

Further review of court of appeals decision affirming district court summary judgment in favor of insurer, dismissing policyholders' claim for uninsured motorist benefits. **DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Steven V. Lawyer of Steven V. Lawyer & Associates, P.L.C., Des Moines, for appellants.

Coreen K. Sweeney and Anna W. Mundy of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

**TERNUS, Chief Justice.**

The appellants, Kale and Stephanie Swainston, appeal from a district court summary judgment ruling, holding that the appellee, American Family Mutual Insurance Company, has no obligation to pay uninsured motorist (UM) benefits to the Swainstons under an insurance policy issued to them by American Family. The court of appeals affirmed the district court decision that American Family had no liability under its policy because its UM benefits could not be stacked on top of UM benefits recovered by the Swainstons under a policy issued by another insurer. Upon our further review, we hold that American Family's liability is governed by Iowa Code section 516A.2(3) (2003), and this statute requires American Family to pay up to its policy limits, subject to the Swainstons meeting the other prerequisites of the policy. Therefore, we vacate the court of appeals decision, reverse the district court judgment, and remand for further proceedings.

## I. Background Facts and Proceedings.

In 2004 the Swainstons were passengers in a vehicle involved in a collision when an approaching van driven by Jaime Colqul crossed the centerline and struck the vehicle in which the Swainstons were riding. Although Colqul was uninsured, the owner of the vehicle in which the Swainstons were passengers had an automobile policy issued by State Farm Mutual Automobile Insurance Company with UM limits of $250,000 per person and $500,000 per accident. State Farm paid the limits of its UM coverage to the Swainstons and three other persons injured in the accident. Kale received $195,000, and Stephanie was paid $54,000.

At the time of the collision, the Swainstons had their own automobile policy issued by American Family. This policy included uninsured motorist coverage with per-person limits of $100,000 and per-accident limits of

$300,000. The Swainstons brought this suit to recover UM benefits under the American Family policy.

American Family filed a motion for summary judgment, contending Iowa Code section 516A.2 prohibited the plaintiffs' recovery under the American Family policy because they had already received UM benefits under the higher limits provided by the State Farm policy. American Family asked for judgment in its favor and a dismissal of the plaintiffs' claim for UM benefits. The plaintiffs responded with their own motion for partial summary judgment, claiming the American Family policy allowed stacking of UM coverages, and such stacking was not prohibited by section 516A.2. They requested a ruling from the court that American Family had coverage for their damages up to the amount of its policy limits.

The district court determined the American Family policy was silent as to stacking, and therefore, pursuant to section 516A.2(3), the Swainstons' recovery was limited to the highest single limit of applicable UM coverages. Because the State Farm UM limits were higher than the American Family UM limits, the court concluded the plaintiffs were not entitled to recover under the American Family policy. The court granted summary judgment to American Family on the plaintiffs' claim and denied the plaintiffs' cross-motion for partial summary judgment.

The plaintiffs appealed, and their appeal was transferred to the court of appeals. The court of appeals agreed with the reasoning of the district court and affirmed the district court's judgment. We granted the plaintiffs' application for further review.

## II. Legal Principles Governing Our Review.

**A. Scope of Review.** We review rulings on summary judgment motions for the correction of errors of law. *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008). "To obtain a grant of summary

judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999).

**B. Contract Interpretation.** "When the parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court." *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 406 (Iowa 2002). In construing insurance contracts, we adhere to the rule "that the intent of the parties must control." *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). Except in cases of ambiguity, that intent is determined by what the policy says. *Id.*

Statutory provisions also play a role in the interpretation of insurance contracts, as we explained in *Thomas*:

> Notwithstanding the principle that the plain meaning of an insurance contract generally prevails, this court has recognized that statutory law may also affect the interpretation and validity of policy provisions. When a statute authorizes a contract of insurance, " '[t]he statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy.' " Consequently, when construing a contract provision that affects underinsured [or uninsured] motorist coverage, we must review not only the language of the policy but the terms of the UIM [and UM] statute, Iowa Code chapter 516A, as well.

749 N.W.2d at 682 (quoting *Lee*, 646 N.W.2d at 406) (citations omitted).

**C. Statutory Interpretation.** Principles of statutory interpretation are well established.

> In construing statutes, we give effect to the legislature's intention. In ascertaining legislative intent, we consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied. We consider all parts of an enactment together and do not place undue importance on any single or isolated portion.

*Mortensen v. Heritage Mut. Ins. Co.*, 590 N.W.2d 35, 39 (Iowa 1999) (citations omitted).

### III. Discussion.

It is important at the outset to have a clear understanding of two concepts that are important in this case—stacking and other insurance clauses.

> The concept of "stacking" coverages . . . arises where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded. In essence, stacking describes the phenomenon of insureds . . . adding all available policies together to create a greater pool in order to satisfy their actual loss.

12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 169:4, at 169-14 to 169-15 (3d ed. 1998) (footnote omitted) [hereinafter *Couch on Insurance*]; *accord Mortensen*, 590 N.W.2d at 38 ("Stacking is a term which refers to the availability of more than one insurance policy, or one policy with multiple vehicles, providing reimbursement of the losses of the insured."); *Farm Bureau Mut. Ins. Co. of Iowa v. Ries*, 551 N.W.2d 316, 318 (Iowa 1996) (same). When an insured seeks to recover UM benefits under more than one policy, as here, the issue is one of interpolicy stacking. *Mortensen*, 590 N.W.2d at 38. "Intrapolicy stacking occurs when the insured recovers . . . uninsured benefits for more than one vehicle under a single policy." *Id.*

Other insurance provisions are conceptually different from stacking.

> The basic difference between the concept of stacking and the operation of other insurance clauses can be simply stated as: other insurance clauses address rules for determining responsibility if more than one coverage is considered to apply, while stacking addresses whether more than one coverage which would otherwise be applicable should, in fact, be applied at all. As such, the "other insurance" clauses should only come into play after the determination of whether the insured has the right to stack coverages at all.

*Couch on Insurance* § 169:9, at 169-23 (footnote omitted); *accord Mortensen*, 590 N.W.2d at 40 ("Stacking concerns whether more than one coverage should be paid to an insured. Other insurance clauses, on the other hand, apply after a determination of the applicability of stacking has been made, and address rules of responsibility between insurance companies." (Citation omitted.)).[1]

"Other insurance clauses are generally of three types: (1) calling for proration of coverage between the multiple policies; (2) stating that the policy will be 'excess' to any other applicable coverage; (3) seeking to avoid any contribution at all." *Couch on Insurance* § 169:9, at 169-23 (footnote omitted). When an other insurance provision is of the last type, providing that the coverage will not apply when other applicable coverage exists, "the other insurance provision may be considered either to preclude the issue of stacking by rendering the additional coverage inapplicable, or to represent a policy provision which prohibits stacking." *Id.* at 169-24; *accord id.* § 169:32, at 169-73 ("The insurer may also avoid stacking by using an 'other insurance' or 'excess escape' clause which is unambiguous . . . ." (Footnote omitted.)).

With these concepts in mind, we turn to the Iowa statute that has been interpreted to allow insurers to include either stacking or antistacking provisions in the UM coverage of their policies. *See* Iowa Code § 516A.2.[2]

**A. Section 516A.2.** Iowa Code section 516A.2(1) requires that UM coverage be afforded, "whether alone or in combination with similar coverage

---

[1]Admittedly, our prior cases have not been entirely consistent in distinguishing between the concept of stacking—the availability of multiple coverages—and other insurance provisions addressing the priority of coverage when multiple coverages are available. *See, e.g., Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 725 (Iowa 1995) (referring to insurer's other insurance clause as an antistacking provision).

[2]Section 516A.2 also applies to underinsured motorist (UIM) coverage. Because UIM coverage is not at issue in this case, we limit our references in this opinion to UM coverage.

afforded [under other policies]," only in limits that would have been afforded had the insured been injured by a motorist insured under a policy with the minimum liability limits required by Iowa law. *Id.* § 516A.2(1).[3] Because this statute requires only minimum limits, we have construed this provision to permit insurers to include policy terms prohibiting stacking of multiple UM benefits. *Mortensen*, 590 N.W.2d at 38–39. In other words, an insurance company can prohibit interpolicy stacking by including a provision stating that its policy does not provide coverage if the insured has UM coverage under another policy providing at least the required minimum limits. Similarly, an insurer can avoid intrapolicy stacking by stating that only one limit of liability is available regardless of the number of vehicles insured. *See Couch on Insurance* § 169:40, at 169-88 to 169-90 (discussing insurers' use of limit-of-liability provisions to prohibit intrapolicy stacking).

While section 516A.2(1) allows antistacking provisions, section 516A.2(2) requires the commissioner of insurance to assure the availability

---

[3]Iowa Code section 516A.2(1) provides in pertinent part:

[N]othing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, *whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies*, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 11 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

To the extent that *Hernandez v. Farmers Insurance Company*, 460 N.W.2d 842 (Iowa 1990), provided for interpolicy stacking of uninsured or underinsured coverages in contravention of specific contract or policy language, the general assembly declares such decision abrogated and declares that the enforcement of antistacking provisions contained in a motor vehicle insurance policy does not frustrate the protection given to an insured under section 516A.1.

(Emphasis added.) Iowa Code section 321A.1(11), which provides the baseline for UM coverage under section 516A.2(1), requires liability limits of $20,000 per person and $40,000 per accident.

of policies that provide for the stacking of UM coverages. Iowa Code § 516A.2(2).[4] We have interpreted this provision as evidencing a legislative intent that parties may contract for policies that permit stacking of UM benefits. *Mortensen,* 590 N.W.2d at 39.

The dispute in this case centers on the third subsection of section 516A.2, which states:

> It is the intent of the general assembly that when more than one motor vehicle insurance policy is purchased by or on behalf of an injured insured and which provides uninsured . . . motor vehicle coverage to an insured injured in an accident, the injured insured is entitled to recover up to an amount equal to the highest single limit for uninsured . . . motor vehicle coverage under any one of the above described motor vehicle insurance policies insuring the injured person which amount shall be paid by the insurers according to any priority of coverage provisions contained in the policies insuring the injured insured.

Iowa Code § 516A.2(3). In *Mortensen,* we held that, when an insurance policy is silent with respect to the stacking of multiple UM coverages, section 516A.2(3) provides a default rule that permits the insured "to recover up to the highest policy limit." 590 N.W.2d at 39.

The plaintiffs challenge our interpretation of section 516A.2(3) in *Mortensen,* contending subsection (3) "creates a nonoptional prohibition of stacking of uninsured . . . coverage in those circumstances where the policies involved were 'purchased by or on behalf of' the injured individual." They claim this court ignored the mandatory nature of subsection (3), as well as its limited reach.

---

[4]Section 516A.2(2) provides:

Pursuant to chapter 17A, the commissioner of insurance shall, by January 1, 1992, adopt rules to assure the availability, within the state, of motor vehicle insurance policies, riders, endorsements, or other forms of coverage, the terms of which shall provide for the stacking of uninsured and underinsured coverages with any similar coverage which may be available to an insured.

Iowa Code § 516A.2(2).

The policies involved in *Mortensen* were both issued to the injured party, so the applicability of the "by or on behalf of" language was not at issue in that case. *Id.* at 37. In an earlier case, however, *Mewes v. State Farm Automobile Insurance Co.,* 530 N.W.2d 718 (Iowa 1995), this court did consider this particular language. In *Mewes,* we placed a broad interpretation on the so-called limiting language of subsection (3)— "purchased by or on behalf of." 530 N.W.2d at 725. We held a policy that provided coverage to persons based on their occupancy of the insured vehicle as passengers was purchased "on behalf of" the passengers as contemplated by subsection (3). *Id.*

We are not inclined to overrule our *Mewes* decision. The legislature chose broad language to describe the scope of this subsection—"by or on behalf of." Had the legislature wanted to limit the rule of this subsection to more restricted circumstances, it could have used more definitive terms, including only policies under which the injured person was a named insured or member of the named insured's household. The legislature did not do so. Thus, our interpretation of subsection (3) is consistent with the statutory language, as well as the legislature's overall intent in enacting section 516A.2, which was to permit insurers to avoid the stacking of multiple UM coverages. *Id.* at 724.

We think our decision in *Mortensen,* that the rule of subsection (3) applies *only* as a default rule, is also consistent with legislative intent. It is apparent from the first two subsections of section 516A.2 that the legislature intended that Iowa insureds have the option of purchasing policies that do not allow stacking, as well as policies that permit stacking, the latter presumably at a higher cost. An insured's freedom to choose the type of coverage desired would be substantially undermined if section 516A.2(3) were interpreted to be a mandatory rule whenever the policies were

purchased by or on behalf of the injured person. Under the plaintiffs' interpretation of subsection (3), an insured who purchased policies permitting stacking could be deprived of the benefit of his bargain. The plaintiffs suggest no reason the legislature would encourage the availability of policies that allow as well as prohibit stacking in subsections (1) and (2) and then impose a mandatory rule in subsection (3) that would apply notwithstanding the terms of the insurance contract. We continue to believe that interpreting subsection (3) to provide a default rule when the parties have failed to address stacking in their insurance contract best effectuates the legislative intent evidenced in section 516A.2.

Finally, and notwithstanding supporting language in *Mortensen*,[5] we disagree that subsection (3) prohibits stacking in the sense of limiting an insured to recovery under one policy, as the plaintiffs argue. First of all, subsection (3) only addresses interpolicy stacking. *See* Iowa Code § 516A.2(3) (referring to situations "when more than one motor vehicle insurance *policy* is purchased by or on behalf of an injured insured" (emphasis added)). With respect to the applicability of multiple policies, subsection (3) strikes a middle ground: it anticipates that all applicable coverages are available to pay the insured's loss, but limits the insurers' exposure under their policies to "the highest single limit for uninsured . . . motor vehicle coverage under any *one* of the above described motor vehicle insurance policies insuring the injured person." *Id.* (emphasis added). The insurers' liability for this sum is determined by the other insurance provisions of the policies. *Id.* (stating this amount "shall be paid by the

---

[5]We stated in *Mortensen* that section 516A.2(3) provides a default rule permitting the insured "to recover up to the highest policy limit, *with no stacking of coverage*." 590 N.W.2d at 39 (emphasis added). The latter portion of this statement is not entirely accurate, as our discussion of the default rule in the case before us shows. Section 516A.2(3) does not make antistacking the default rule, as subsection (3) specifically provides for the applicability of multiple coverages, collectively subject to the highest limit of liability.

insurers according to any priority of coverage provisions contained in the policies insuring the injured insured"). In summary, the default rule under subsection (3) is that an insured covered by multiple policies is entitled to recover the highest single applicable UM limit, paid by all insurers according to their other insurance clauses.[6]

We now examine the terms of the American Family policy.

**B. American Family Policy.** In the present case, the parties disagree on whether the American Family policy addresses stacking of UM benefits. The plaintiffs claim a provision in the "limits of liability" section of the American Family policy contemplates stacking and, therefore, inferentially authorizes stacking. This section includes the following relevant statement: "We will pay no more than these maximums [referring to the stated limits of liability] no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved." Even though this clause refers to the involvement of multiple policies, we are not convinced this isolated reference implies that UM coverage is available under the American Family policy when multiple policies apply. Rather, this sentence, considered as a whole, limits liability to the per-person and per-accident maximums stated in the declarations, effectively prohibiting *intrapolicy* stacking, i.e., the application of multiple limits of liability under this policy. *See generally Mortensen,* 590 N.W.2d at 37 n.1 (noting a similar provision addresses intrapolicy stacking); 24 John Alan Appleman,

---

[6]Although the language in *Mortensen* referring to subsection (3) as prohibiting stacking or containing a default antistacking rule is not accurate because that provision allows recovery under multiple policies, the application of subsection (3) in *Mortensen* is entirely consistent with our analysis of that provision in the present case. Even though we stated in *Mortensen* that subsection (3) prohibited stacking, we held both policies that applied to the insured's loss in that case were available to pay his damages up to the highest limit of one of the policies, payable in accordance with the other insurance clauses of the policies. *Mortensen,* 590 N.W.2d at 40. Accordingly, we do not overrule *Mortensen* today; we merely abandon the terminology used in that decision.

*Appleman on Insurance* § 150.1[C][4], at 197–98 (2d ed. 2004) (noting such provisions are "designed to prohibit intra-policy horizontal stacking"). We conclude this provision does not promise or prohibit interpolicy stacking.

We next consider whether the other insurance provision in American Family's policy addresses stacking. The "other insurance" provision of this policy states in relevant part:

> If there is other similar insurance on a loss covered by this Part [UM insurance], we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this Part for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

As noted, this provision appears in the UM coverage of the policy. Therefore, "other similar insurance" as contemplated by this provision is other UM coverage. Clearly, this provision addresses the situation in which more than one policy providing UM coverage applies. It does not, however, contain an escape clause that would "avoid any contribution at all." *Couch on Insurance* § 169:9, at 169-23. Therefore, this provision does not address stacking as that term is understood in the insurance context. *Mortensen*, 590 N.W.2d at 40 (holding similar provision did not cover stacking).

We conclude, as did the district court, that the American Family policy does not address stacking. Therefore, the default rule of section 516A.2(3) applies. We disagree, however, with the district court's application of that rule. As we noted above, the default rule of subsection (3) has two components: (1) it allows the insured to recover the highest limit of the applicable coverages, and (2) the insurers' liability for this sum is determined by their other insurance or "priority of coverage" clauses. Iowa Code § 516A.2(3). Application of these components to the undisputed facts of this case shows that American Family does indeed have coverage under its policy for the plaintiffs' damages.

The undisputed facts show that both the American Family and State Farm policies provide coverage to the plaintiffs for the damages they sustained in the subject accident. The American Family policy provided limits of $100,000 per person and $300,000 per accident. The State Farm policy provided coverage subject to limits of $250,000 per person and $500,000 per accident. Therefore, "the highest single limit for uninsured . . . motor vehicle coverage" provided by the applicable policies is $250,000 per person and $500,000 per accident. Under section 516A.2(3), the plaintiffs are entitled to recover up to this amount.[7]

We next consider the other insurance clauses of these policies, as section 516A.2(3) provides that the liability of insurers having available coverage is determined by such provisions. The record does not contain the complete State Farm policy. Nonetheless, State Farm has already paid its policy limits, so it is fair to assume that its policy provided primary coverage for the plaintiffs' UM claims. American Family's other insurance clause states that, with one exception, it will pay its proportionate share of UM benefits when there is other UM insurance that covers a particular loss. The exception is when the insured's UM loss occurs while occupying a vehicle the insured does not own. In that event, the American Family UM coverage is excess over other UM coverage applicable to the insured's loss. The undisputed facts establish that the plaintiffs were injured while occupying a vehicle they did not own. Therefore, the American Family coverage is excess over the State Farm coverage.

---

[7]Although American Family states in its brief that "the Swainstons recovered the 'highest single limit for uninsured' motor vehicle coverage" and consequently are prohibited by section 516A.2(3) from any further recovery, we find nothing in the record to support this statement. The undisputed facts show that neither of the plaintiffs recovered more than the highest per-person limit of $250,000 and together they recovered only $249,000, an amount substantially below the highest per-accident limit of $500,000.

State Farm has paid Kale Swainston $195,000 and Stephanie Swainston $54,000. Having recovered less than the $250,000 per person and $500,000 per accident limits, the Swainstons have not yet reached the limits to which they are entitled by virtue of section 516A.2(3). Therefore, subject to proof of the uninsured motorist's liability and the extent of their damages, they are entitled to recover under the American Family policy up to the per-person limits of $100,000.[8]

We conclude the district court erred in holding the UM coverage of the American Family policy did not provide any coverage for the plaintiffs' damages simply because the State Farm policy afforded UM benefits with higher limits of liability. Therefore, the court erred in granting summary judgment to American Family on the plaintiffs' claim for coverage. For the same reason, the court erred in refusing to grant partial summary judgment to the plaintiffs. The plaintiffs were entitled to a ruling that the American Family policy provided excess UM coverage for the plaintiffs' damages incurred in the accident with the uninsured motorist subject to the plaintiffs' satisfaction of the other applicable requirements of the policy.

**IV. Conclusion and Disposition.**

American Family's policy provides UM coverage for the damages sustained by the plaintiffs. The district court erred in granting summary judgment to American Family and denying partial summary judgment to the plaintiffs. Accordingly, we vacate the court of appeals decision, reverse the

---

[8]Under the default rule of section 516A.2(3), an insured's recovery will be restricted by two sets of limits: the highest applicable limit of all policies providing coverage (here $250,000/$500,000) and the limit of the policy under which recovery is sought (here $100,000/$300,000). Thus, Kale, who has already been paid $195,000, can recover, at the most, $55,000 under the American Family policy, notwithstanding American Family's per-person limit of $100,000, because his total recovery is limited to the highest applicable limit of $250,000. In contrast, Stephanie has only recovered $54,000, leaving her $196,000 short of the $250,000 highest limit. Nonetheless, her potential recovery under the American Family policy is capped at $100,000, the per-person limit of that policy.

judgment of the district court, and remand this case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**